**TERRILL BARNES**, **CURTIS PIGGEE**, and
**AMARI THOMAS-ACOSTA,** ████████████,
**by his mother and guardian, MICHELLE**
**THOMAS-ACOSTA,**

                        Plaintiffs,

v.                                     **Case No._____**

**DAVID J. CLARKE JR**.; **RICHARD E. SCHMIDT**;
**CAPT. GOLD**; **C/O DECORIE SMITH**,
and
**MILWAUKEE COUNTY BEHAVIORAL HEALTH DIVISION**
9455 Watertown Plank Road,
Milwaukee, WI 53226
**JOHN DOE #1**; and, **JOHN DOES #2-10**,
821 W. State Street
Milwaukee, WI 53233
and,
**MILWAUKEE COUNTY**, a Municipal Corporation,
901 N. 9th Street, Room 306
Milwaukee, WI 53223
and,
**ARMOR CORRECTIONAL HEALTH SERVICES,**
**INC**.;
and, **JOHN DOES #11-20**,
c/o Registered Agent, C T Corporation System,
8020 Excelsior Drive, Ste. 200
Madison, WI 53717,

                        Defendants.

---

# COMPLAINT AND JURY DEMAND

---

      NOW COME the above-named Plaintiffs, **TERRILL THOMAS, CURTIS PIGGEE,**

and **AMARI THOMAS-ACOSTA,** by his mother and guardian**, MICHELLTHOMAS-**

**ACOSTA,** by and through their attorneys, **WALTER W. STERN & ASSOCIATES,** and as for

an action under the United States Constitution, particularly under the Due Process Clause of the

# CIVIL RIGHTS COMPLAINT

14th Amendment to the United States Constitution, and the 8th and 14th Amendments; Title 42 US Code 1983-1985; Articles I, Sections One and Six of the Wisconsin Constitution; and, pursuant to Wis. Stat. §§ 895.03 and Chapter 655 of the Wisconsin Annotated Statutes, together with their claims for relief against the above-named Defendants, allege and show the Court as follows:

## JURISDICTION

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the United States Constitution and Laws of the United States, and pursuant to 28 U.S.C. § 1343(a)(3) because this action seeks to redress the deprivation, under color of state law, of Plaintiffs' civil rights.

2. That this Court has supplemental jurisdiction over all state law claims which arise out of the same facts common to Plaintiffs' federal claims pursuant to 28 U.S.C. § 1367.

## VENUE

3. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because most Defendants reside in this district and because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred within this district.

## PARTIES TO THE ACTION

4. Plaintiffs, TERRILL BARNES and CURTIS PIGGEE, are citizens of the United States, residents of the State of Wisconsin, and are the adult sons of the Decedent, TERRILL THOMAS (hereinafter "TERRILL THOMAS"). At all times material hereto, TERRILL THOMAS was an inmate residing at the Criminal Justice Facility of the Milwaukee County Sheriff's Office ("MCSO"), and was entitled to all rights, privileges, and

immunities accorded all residents of Milwaukee County, the State of Wisconsin, and citizens of the United States, pursuant to the Constitution of the United States of America.

5.  Plaintiff AMARI THOMAS-ACOSTA, date of birth ███████, is a citizen of the United States, resident of Wisconsin, and the minor child of the Decedent, TERRILL THOMAS. He brings this action by and through his mother and guardian, MICHELLE THOMAS-ACOSTA.

6.  TERRILL THOMAS's serious medical and psychological needs were deliberately ignored and neglected while in custody, and under the care/control of the MCSO, Milwaukee County, and Armor Correctional Health Services, Inc, all of which the Plaintiffs relied upon to provide adequate medical and psychological care.  As a result of the negligence and deliberate indifference of the Defendants TERRILL THOMAS died in the Maximum Security Unit of the Milwaukee County Justice Facility ("Justice Facility").

7.  Defendant, Sheriff David J. Clarke, Jr. ("CLARKE"), is an adult citizen of the United States and a resident of the State of Wisconsin.  At all times material hereto, Defendant CLARKE was the Sheriff of the County of Milwaukee, and in that capacity was ultimately responsible for the health, safety, security, welfare and humane treatment of all inmates at the Justice Facility, including TERRILL THOMAS.  At all times material hereto, Defendant CLARKE oversaw, supervised and had direct control over the management and operations of the entire MCSO, including the Justice Facility, and was responsible for the MCSO's policies and procedures, as well as training. At all times material hereto, Defendant CLARKE was aware of the MCSO's deficiencies, and the

intentional lack of compliance with the Consent Decree, issued pursuant to Milwaukee County Circuit Court Case No. 1996-CV- 1835, at the Justice Facility, as well as Medical Monitor Dr. Ronald Shansky's recommendations, and took little to no action to remedy the recorded deficiencies. At all times material hereto, Defendant CLARKE had control and authority over the MCSO/Milwaukee County's contract with Defendant Armor Correctional Health Services, Inc. At all times material hereto, Defendant CLARKE was deliberately indifferent to the serious medical needs and Constitutional rights of TERRILL THOMAS, and ignored the Justice Facility's staff's lack of sufficient training in policies and procedures, both written and unwritten, to adequately address TERRILL THOMAS's, and other inmates in need of medical care.

8. Defendant, Richard E. Schmidt ("SCHMIDT"), is an adult citizen of the United States and a resident of the State of Wisconsin. At all times material hereto, Defendant SCHMIDT was employed by the MCSO as an Inspector and was ultimately responsible for the health, safety, security, welfare and humane treatment of all inmates at the Justice Facility, including TERRILL THOMAS. At all times material hereto, Defendant SCHMIDT had oversight of the medical, clerical, correctional officers, and staff assigned to the Justice Facility. At all times material hereto, Defendant SCHMIDT also oversaw, supervised, and had control over the management and operation of the entire Sheriff's Department, and was responsible for the MSCO's policies, procedures, and training. At all times material hereto, Defendant SCHMIDT was aware of the MCSO's deficiencies and the Justice Facility's non-compliance with the Consent Decree issued pursuant to Milwaukee County Circuit Court Case No. 1996-CV-1835, as well as Medical Monitor Dr. Ronald Shansky's recommendations, but took no action to remedy the deficiencies.

At all times material hereto, Defendant SCHMIDT was deliberately indifferent to the serious medical and psychological needs, as well as the Constitutional rights of TERRILL THOMAS by ignoring the Justice Facility's staff's lack of sufficient training in policies and procedures, both written and unwritten, to adequately address TERRILL THOMAS, and other inmates in need of medical and psychological care.

9. Defendants CAPT. GOLD and CORRECTIONS OFFICER DECORIE SMITH, are adult citizens of the United States and residents of the State of Wisconsin. At all times material hereto, CAPT. GOLD was employed as a Correctional Captain at the Justice Facility by Milwaukee County and the MCSO, and was responsible for the health, safety, security, welfare and humane treatment of all inmates at the Justice Facility, including TERRILL THOMAS, in April of 2016. At all times material hereto, CAPT. GOLD was assigned to supervise the Maximum Security Unit and/or Special Needs Unit (4-D) at the Justice Facility. Upon information and belief, Defendant CAPT. GOLD made the decision to transfer TERRILL THOMAS into the Maximum Security Unit at the Justice Facility. Defendant C/O DECORIE SMITH, was assigned to monitor those prisoners confined to the Segregation Unit, (4-D), with half-hour rounds to view and assure the safety and well-being of the prisoners, including TERRILL THOMAS. At all times material hereto, Defendants CAPT. GOLD and C/O DECORIE SMITH were acting under color of state law, within the scope of his/her employment and authority, and pursuant to Milwaukee County's and the MCSO's policies, customs, and practices, written and unwritten, which caused the constitutional violations asserted herein.

10. Defendant Correctional Officer JOHN DOE #1, is an adult citizen of the United States and a resident of the State of Wisconsin. At all times material hereto, JOHN DOE #1

was employed as a Correctional Officer at the Justice Facility by Milwaukee County and MCSO, and was responsible for the health, safety, security, welfare and humane treatment of all inmates at the Justice Facility, including TERRILL THOMAS, in April of 2016.  At all times material hereto, JOHN DOE #1 was assigned to the Maximum Security Unit and/or Special Needs Unit at the Justice Facility, (4-D), on the afternoon shift.  Upon information and belief, Defendant John Doe #1 failed to monitor TERRILL THOMAS at half-hour intervals to monitor his well-being and safety from the afternoon and evening of April 23, 1016 to April 24, 2016, when TERRILL THOMAS  was dying from dehydration in his cell.  At all times material hereto, Defendant JOHN DOE #1 was acting under color of state law, within the scope of his/her employment and authority, and pursuant to Milwaukee County's and the MCSO's policies, customs, and practices, written and unwritten, which were the moving force behind the constitutional violations asserted herein.

11. Defendants JOHN DOES #2-10 are adult citizens of the United States and residents of the State of Wisconsin.  At all times material hereto, JOHN DOES #2-10 were employed as Correctional Officers/Employees at the Justice Facility by Milwaukee County and the MCSO, and were responsible for the health, safety, security, welfare and humane treatment of all inmates at the Justice Facility, including TERRILL THOMAS, in April of 2016.  At all times material hereto, JOHN DOES #2-10 were acting under color of state law, within the scope of their employment and authority, and pursuant to Milwaukee County's and the MCSO's policies, customs, and practices which were the moving force behind the constitutional violations asserted herein.

12. JOHN DOES #11-20 are unnamed adult citizens of the United States and residents of the State of Wisconsin. At all times material hereto, JOHN DOES #11-20 were employed at the Justice Facility by Defendant Armor Correctional Health Services Inc., Milwaukee County, and/or the MCSO, and were responsible for providing health care to all inmates at the Justice Facility, including TERRILL THOMAS, in April of 2016. At all times material hereto, JOHN DOES #11-20 were acting under color of state law, within the scope of their employment and authority, and pursuant to the policies, customs, and practices of Armor Correctional Health Services, Inc., Milwaukee County, and the MCSO, which were the moving force behind the constitutional violations asserted herein.

13. Defendant MILWAUKEE COUNTY, with executive offices located at 901 N. 9th Street, Suite 306, Milwaukee, Wisconsin 53233, and offices of its Corporation Counsel being located at 901 N. 9th Street, Suite 303, Milwaukee, Wisconsin 53233, at all times material hereto, was a Municipal Corporation organized under the laws of the State of Wisconsin. Defendant Milwaukee County established, operated and maintained the Justice Facility and, at all times material hereto, Defendant Milwaukee County was responsible for training and supervising the employees of the MCSO, including MILWAUKEE COUNTY BEHAVIORAL HEALTH DIVISION, the creation and implementation of policies and procedures at the Justice Facility, ensuring the MCSO was in compliance with the Consent Decree from Milwaukee County Circuit Court, and that inmate healthcare and safety were not ignored.

14. Defendant ARMOR CORRECTIONAL HEALTH SERVICES, INC. ("ARMOR CORRECTIONAL"), with its Principal Office located at 4960 S.W. 72nd Avenue, Suite #400, Miami, FL 33155, and Registered Agent being C T Corporation System whose

address is 8020 Excelsior Dr., Ste. 200, Madison, WI 53717, is a Florida for profit Corporation, incorporated under the laws of the State of Florida, operating as a health care provider in the State of Wisconsin for purposes of providing medical care to patients, and is responsible for the acts of its employees and agents involved in health care services provided to patients therein. At all times material hereto, Defendant ARMOR CORRECTIONAL provided health care services to inmates at the Justice Facility under color of law, including TERRILL THOMAS.

15. All of the Defendants are sued in their individual and official capacities. At all times material hereto, all Defendants were acting under the color of state law; pursuant to their authority as officials, agents, contractors or employees of Milwaukee County; within the scope of their employment as representatives of public entities, and were deliberately indifferent to the Constitutional and statutory rights of TERRILL THOMAS.

## FACTS

16. That at all material times hereto, TERRILL THOMAS was a pretrial detainee and being involuntarily detained at the Justice Facility under the direct custody, supervision, and care of the Defendants, as a result of an April 14, 2016 arrested by City of Milwaukee Police after officers reported shots being fired at the Potawatomi Casino.

17. That on April 15, the Milwaukee Police, having charged TERRILL THOMAS with criminal offenses, prepared to transfer custody of TERRILL THOMAS to Milwaukee County Sheriff David Clarke, as per Wisconsin law and procedure.

18. That while held by Milwaukee Police, TERRILL THOMAS did demonstrate signs of acute psychological disorders, disrupting the City Jail and causing officers to expend

more time in securing him and keeping him safe until transfer was effectuated to the Milwaukee County Sheriff.

19. That prior to transfer to CLARKE's care and custody, the Milwaukee Police had TERRILL THOMAS examined at Columbia-St. Mary's Hospital, where he was medically cleared for transfer to the Milwaukee County Sheriff.

20. That at the time of the transfer, Milwaukee Police advised Correctional Staff of the conduct, actions and necessary measures the Milwaukee Police employed to maintain TERRILL THOMAS and keep him safe during his brief time in custody of the Milwaukee Police and prior to transfer.

21. That because of TERRILL THOMAS's conduct and offenses charged, Correctional staff identified TERRILL THOMAS for immediate placement in the Special Housing Unit (4-D) of the Facility, which is a segregation unit, with solitary confinement in one-man cells and locked in twenty-four hours per day.

22. That at some point in time, and at all times relevant, the water system to TERRILL THOMAS's cell was terminated, which denied TERRILL THOMAS any running water, water for flushing the toilet, or to even permit him to wash his face, while confined in that cell.

23. At approximately 1:36 a.m. on April 24, 2016, Defendant C/O DECORIE SMITH reported that TERRILL THOMAS was unresponsive in his cell.

24. At approximately 2:26 a.m. on April 24, 2016, Lt. Kurt Harthun of the Milwaukee Fire Department, who had responded to the death of TERRILL THOMAS at the Justice Facility, notified the Milwaukee County Medical Examiner that TERRILL THOMAS was found unresponsive in his cell during a routine check by a guard. Further, when

MED 7, the emergency responders from Milwaukee Fire Department arrived, TERRILL THOMAS was asystolic (deceased), which was then verified by MED 7 staff, and **1:57** a.m. was indicated as the time of death.

25. That when the MED 7 and Medical Examiner staff arrived, TERRILL THOMAS was lying naked on the floor of his cell, which was noted as "normal behavior" by MCSO correctional staff.

26. That at the time of discovery by MCSO correctional officers, TERRILL THOMAS was noted to be "very stiff" and in fixed rigor.

27. That it was further noted that TERRILL THOMAS had dried blood around his groin and trailing down his right leg, which was clearly visible upon inspection of his naked body.

28. That the Medical Examiner investigative staff had contacted Lt. Donaldson of the Milwaukee Police Department, who verified that TERRILL THOMAS had been placed in the Segregation Unit (4-D), due to his offense and his behavior while in custody.

29. That on April 24, 2016, the body of TERRILL THOMAS was transported to the Milwaukee County Medical Examiner to determine a cause of death, perform an autopsy, and prepare samples for a toxicology screen and report.

30. That prior to performing an autopsy, the Medical Examiner obtained medical files from Columbia-St. Mary's, West Allis Medical, Aurora Health – St. Luke's, the MCSO, Behavioral Health at the Justice Facility, and the Milwaukee Police Department.

31. That prior to the subject incarceration at the Justice Facility, TERRILL THOMAS had been in custody with the MCSO on several occasions, and had a well-documented history of medical and psychological issues or disorders.

32. That upon information and belief, Behavioral Health clinicians at the Justice Facility were well aware of TERRILL THOMAS's psychological history and his current situation, along with the Order signed by a Commissioner to transport TERRILL THOMAS for a comprehensive psychological evaluation to determine his competency to face and defend the instant criminal charges.

33. That upon information and belief, the Justice Facility, MCSO and Behavioral Health Services at the Justice Facility are not equipped to perform the competency evaluation ordered for TERRILL THOMAS, and, instead, customarily transfer such prisoners to a Wisconsin Department of Corrections Facility, such as Mendota Mental Health Complex, for such evaluations to be performed by clinicians accustomed to, and who have the proper facilities for safekeeping of prisoners with acute mental disorders or illnesses.

34. That the MCSO and Justice Facility lack any appropriate housing for those suffering such acute mental disorders or illnesses; as such, they house these inmates in Special Housing-Segregation Units, which are maximum security, such as the unit TERRILL THOMAS was confined to until his death.

35. That in an inspection in 2012, Dr. Shansky, pursuant to the Consent Decree, held that in an inspection days before that Department of Corrections inspection, found systemic problems in several areas, including record keeping, delayed access to medical services and medications, and "severely mentally ill patients being inappropriately placed in disciplinary cells."

36. That in a May 2016 report, Dr. Shansky, pursuant to the Consent Decree, did specifically state to these Defendants about concerns regarding the lack of proper medical and psychological staff, treatments, facilities and overall violations of the Consent Decree at

the Facility in the Christenson case, to which Defendant CLARKE and the County freely entered into.

37. That MILWAUKEE COUNTY BEHAVIORAL HEALTH, through its staff and contractual employees, failed to monitor and treat TERRILL THOMAS during his April 2016 incarceration, or cause his transfer to their Mental Health Complex on Watertown Plank Road, in Milwaukee, so as to treat and appropriate mental health surroundings for TERRILL THOMAS.

38. That MILWAUKEE COUNTY BEHAVIORAL HEALTH clinicians and staff failed to follow protocol, policy, written and unwritten, for the care, custody and treatment of TERRILL THOMAS, which contributed to his death from dehydration on April 24, 2016.

39. That had MILWAUKEE COUNTY BEHAVIORAL HEALTH clinicians and staff appropriately monitored, treated and cared for TERRILL THOMAS, TERRILL THOMAS would have survived his incarceration in the Justice Facility, including force-feeding and forced rehydration, either intravenously or orally.

40. That from April 15th to April 23rd, 2016, TERRILL THOMAS did make several and repetitive requests for water to Defendant JOHN DOES #1-10, all of which were ignored and resulted in TERRILL THOMAS being denied water.

41. That video surveillance in the Segregation Unit, (4-D), upon information and belief, substantiates TERRILL THOMAS's repeated complaints of not having water to JOHN DOES #1-10.

42. That Defendant JOHN DOES #1-10 did nothing further in response.

43. That had Correctional staff and supervisors, including CAPT. GOLD, C/O DECORIE SMITH and JOHN DOES #1-10, appropriately monitored, treated and cared for TERRILL THOMAS, TERRILL THOMAS would have survived his incarceration in the Justice Facility, including force-feeding and forced rehydration, either intravenously or orally.

44. That TERRILL THOMAS was not in the Segregation Unit for "suicide watch," as defined in MCSO Policy.

45. That prisoners confined near TERRILL THOMAS's cell overheard his cries for water for days, yet correctional, medical and psychological personnel ignored those cries and never gave TERRILL THOMAS water, presumably as some misguided form of punishment or retribution for the alleged crimes that brought him to the Justice Facility.

46. That Defendants JOHN DOES #6-8 were supervisors in charge of the second and third shifts, while Defendants JOHN DOES #1-5 were on duty on April 22nd and April 23rd, 2016, in the Maximum Security unit while TERRILL THOMAS was in the advanced stages of dehydration and dying.

47. That TERRILL THOMAS was subjected to a form of torture by being intentionally and/or recklessly denied hydration, which was the responsibility of all Defendants, jointly and severally.

48. That a fellow inmate, Marcus Berry, repeatedly urged corrections officers to give TERRILL THOMAS water the day before he died. Mr. Berry was in a cell across from TERRILL THOMAS the last six days of TERRILL THOMAS's life. Mr. Berry's urging and pleas were repeatedly ignored by the Defendants, named and unnamed.

49. That it was a customary practice in the Justice Facility, and sanctioned by MCSO employees and staff, to place prisoners in the Maximum Security unit and turn the water off, as a form of punishment, in violation of the Consent Decree described hereafter.

50. The MCSO and Milwaukee County entered into a Consent Decree with a class of plaintiffs (current and future inmates at the Justice Facility) in Milwaukee County Circuit Court Case No. 1996-CV-1835, which was approved by Milwaukee County Circuit Court Judge Thomas Donegan on June 19, 2001.

51. The Consent Decree had two components: (1) Population control; and, (2) Medical care.

52. First, the Consent Decree required that Defendant Milwaukee County maintain a general population cap in the Justice Facility, as well as a maximum cap on inmates held in the booking room. It provided that no inmate would spend more than thirty hours in the booking room and required better staffing and training for staff in that area.

53. In terms of medical care, the Consent Decree required that Defendant Milwaukee County provide adequate, well-trained staff to provide health care to inmates and that complete screening of inmates for physical and mental health conditions be conducted. It further set out requirements for physical examinations, dental care, women's health, sick call, mental health, chronic care, and emergencies.

54. As part of the Consent Decree, the parties agreed that a medical monitor be appointed and approved by the Court to supervise Milwaukee County's compliance with the Consent Decree's provisions while the court retained jurisdiction over the case until the County was in full compliance with the terms of the Consent Decree.

55. At all times material hereto, Dr. Shansky was the Court approved medical monitor in charge of monitoring the County's compliance with the Consent Decree.

56. During his tenure, Dr. Shansky documented a series of systematic problems in the Jail's healthcare system.

57. Specifically, Dr. Shansky found that, "health care staffing shortages contribute to delays in access to care and deterioration in quality of care for prisoners; reductions in the number of correctional officers contribute to dangerous lack of access to health care and inability to detect health crisis, and may have played a role in some of the recent deaths at the Jail; that continued turnover in health care leadership positions contribute to lack of oversite of quality of care; and that the electronic record has serious deficiencies and must be altered or replaced."

58. That the County has exhibited a systematic deficiency in staffing for a period lasting over ten years.

59. As a result of the lack of health care staff and deficient medical services at the Justice Facility, correctional officers often improperly attempt to substitute their untrained judgment for that of medical professionals.

60. The lack of staff at the Justice Facility creates severe problems for the County's ability to respond timely and appropriately to medical emergencies and needs, which is exactly what contributed to TERRILL THOMAS's untimely, horrific, and preventable death.

61. Physical and psychological exams performed by Justice Facility staff are incomplete and inadequate, often lacking a referral to an appropriate medical professional.

62. That untrained correctional officers are forced to make medical and psychological decisions concerning the health and welfare of prisoners, while lacking in formal training.

63. That inmates with acute medical and psychological conditions have suffered for days, failed to receive appropriate medical care or referrals and subsequently died in the Justice Facility.

64. On several occasions, Dr. Shansky found that the County was not performing medical emergency drills as required by the Consent Decree.

65. The County has repeatedly failed to conduct investigations into deaths that occurred in their facilities, thereby allowing staff to avoid being disciplined or prosecuted for their actions and creating an atmosphere of deliberate indifference to the health and welfare of inmates.

66. Since April of 2016, there have been 3 other tragic and wholly preventable deaths at the Justice Facility, to wit:

   a. Shadé Swayzer was brought into the Milwaukee County Justice Facility on July 6, 2016, when eight months and one week (33 weeks) pregnant. Several days later, Shadé gave birth while in custody to baby Laliah, by herself and without assistance, medical care, or any other help while locked in a disciplinary cell in the Justice Facility's Maximum Security Unit. Tragically, baby Laliah died hours later in her mother's arms as a result of the Defendants' failure to provide any care or assistance.

   b. On August 28, 2016, Kristina Fiebrink died at the Justice Facility while in the custody of the MCSO. Fiebrink had been arrested and booked into the Justice Facility on August 24, 2016, while she displayed clear signs of being under the influence of heroine, alcohol, and cocaine, which were noted by staff. Despite exhibiting signs and symptoms of acute heroin and alcohol intoxication, Fiebrink

was never placed on preventative detoxification protocol, seen or assessed by a medical practitioner, provided withdrawal medication, or placed on a heightened observation level while at the Justice Facility. On August 27, 2016, and into the early morning hours of August 28, 2016, Fiebrink screamed, begged, and pleaded for help in her cell, but correctional staff did not check on her. Fiebrink was subsequently found deceased in her cell by correctional staff on the morning of August 28, 2016.

c. On October 28, 2016, Michael Madden died at the Justice Facility while in the custody of the MCSO. At the time of Madden's arrest, he was suffering from a heart condition which he had had been since birth, as well as a heroin addiction. Despite these serious and grave medical conditions, Madden received little to no medical care while at the Justice Facility. On October 28, 2016, Madden suffered a seizure rendering him unconscious. The responding officers believed Madden was faking and failed to call a medical emergency and Madden subsequently died.

67. The Consent Decree is still in force and the above listed failures have never been corrected, although the County, the Jailers, CLARKE, and/or Armor Correctional have been personally aware of the problems that for over a decade have led to a culture of deliberate indifference, which was a proximate cause of the death of the Decedent.

68. All Defendants were on notice of the unconstitutional conditions in the Justice Facility and the problems found by Dr. Shansky when he examined the Justice Facility as part of the Consent Decree, and each failed to rectify these conditions.

69. The above acts and omissions of all Defendants, and each of them, constitute a course of conduct and failure to act amounting to willful, wanton and deliberate indifference to the

rights, health, safety, and welfare of TERRILL THOMAS, and those similarly situated, resulting in the deprivation of their constitutional rights, pursuant to the 8th and 14th Amendments to the United States Constitution and the Due Process Clause to the United States Consitution.

70. The acts and omissions of the Defendants, as set forth above, violated the clearly established and well settled federal constitutional rights of the Plaintiffs, i.e., due process of law under the Fourteenth Amendment, and cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution, and under Articles I, Sections One and Six of the Wisconsin Constitution, because said Defendants were deliberately indifferent to the rights of TERRILL THOMAS.

71. The Defendants, jointly and severally, knew that TERRILL THOMAS was suffering from serious medical conditions and needed immediate treatment, but deliberately ignored the same by failing to provide proper medical care while TERRILL THOMAS . was in the Justice Facility, and by denying his repeated request for help and water.

72. The Defendants, jointly and severally, knew TERRILL THOMAS needed medical and psychological care, or would suffer complications from dehydration and its subsequent side effect, including death.

73. That the above named Defendants, jointly and severally, were deliberately indifferent to serious medical and psychological needs and intentionally deprived TERRILL THOMAS of the required medical care and treatment, and acted with reckless disregard of TERRILL THOMAS's serious medical and mental health conditions, which were clearly evident, in violation of his rights, privileges, and immunities as guaranteed by the United

States Constitution, the Eighth Amendment, and Federal Statutes, including 42 U.S.C. § 1983.

74. That the conduct of the Defendants, jointly and severally, shocks the conscious, was reckless, and demonstrates a deliberate indifference to the consequences of their refusal to provide TERRILL THOMAS with medical and mental health care while in the Justice Facility, and refusal to transport TERRILL THOMAS to a hospital or other mental health facility and obtain appropriate care and treatment.

75. That the conduct of each Defendant, individually, and/or as employees and/or agents of Milwaukee County, at the Justice Facility were committed while acting under color of state law, and deprived TERRILL THOMAS of his clearly established rights, privileges, and immunities, in violation of the Due Process Clause and the 8th and 14th Amendments of the United States Constitution, and of 42 U.S.C. § 1983.

76. That the Defendants, jointly and severally, deprived TERRILL THOMAS of his individual rights, as follows:

 a. Deliberately failing to properly train the Justice Facility staff, including medical personnel providing medical care to residents therein, to properly assess and determine when a resident is facing a medical emergency;

 b. Deliberately ignoring TERRILL THOMAS's immediate needs for medical treatment and mental health;

 c. Deliberately failing to transport TERRILL THOMAS to an appropriate hospital or mental health facility for immediate medical care and treatment;

 d. Deliberately failing to seek appropriate medical attention for a in mental distress;

e.  Deliberately failing to seek appropriate medical attention for dehydration intervention;

f.  Deliberately failing to render medical care to a man succumbing to dehydration;

g.  Deliberately failing to conduct timely mandated security/rounds;

h.  Deliberately failing to conduct meaningful security checks/rounds;

i.  Deliberately and willfully failing to notify appropriate doctors, nurses, and medical staff of TERRILL THOMAS's perilous dehydration;

j.  Deliberately failing to hire, train, maintain, and implement competent correctional staff at the Justice Facility;

k.  Deliberately failing to hire, train, maintain, and implement competent medical staff at the Justice Facility;

l.  Deliberately failing to discipline, instruct, supervise, and/or control the conduct of the correctional staff at the Justice Facility, thereby encouraging the wrongful acts and omissions complained of herein;

m.  Deliberately failing to discipline, instruct, supervise, and/or control the conduct of the medical staff at the Justice Facility, thereby encouraging the wrongful acts and omissions complained of herein;

n.  Deliberately allowing a custom and/or practice at the Justice Facility of deliberately ignoring complaints of inmates or their need for medical or mental health attention;

o.  Deliberately, willfully, and wantonly withholding required medical care to TERRILL THOMAS when they had actual knowledge of TERRILL THOMAS's serious medical and mental health conditions requiring immediate attention;

p.  Deliberately, willfully, and wantonly failing to ensure that the Justice Facility was properly and adequately staffed; and,

q.  Deliberately, willfully, and wantonly failing to ensure the Consent Decree was complied with.

r.  Deliberately denied said inmate water to sustain health and life.

77. Milwaukee County, because of the above-alleged facts, engaged in a habit, practice and procedure jeopardizing the physical and mental health of inmates, which imposes liability upon them as an entity because the deliberate indifference was a proximate cause of the death of TERRILL THOMAS.

78. The Defendants, jointly and severally, participated in deliberate indifference to the medical, psychological, and life-sustaining needs of TERRILL THOMAS, and each Defendant, in particular, David CLARKE, Richard SCHMIDT, JOHN DOE #1, JOHN DOES #2-10, ARMOR CORRECTIONAL HEALTH SERVICE INC., and JOHN DOES #11-20, directly participated in the deprivation of life-sustaining water, either by having knowledge that this practice was occurring, and/or directly participating in depriving said TERRILL THOMAS of water, which contributed to his death by dehydration, a homicide, noted by the Medical Examiner for Milwaukee County.

**AS AND FOR NEGLIGENCE**

79. Plaintiffs hereby reassert and reallege each and every allegation contained in Paragraphs 1 through 81 as if fully set forth herein.

80. That by accepting TERRILL THOMAS into custody, Defendants undertook and owed to TERRILL THOMAS the duty to make reasonable efforts to care for him in a reasonably prudent manner, to exercise due care and caution and to follow the common law as it

relates to persons in their custody who are unable to care for themselves or seek medical attention while in custody.

81. Notwithstanding the aforementioned duty of care for medical treatment, Defendants treated TERRILL THOMAS in a manner that was extremely negligent, careless, reckless, and without concern for his safety.

82. Notwithstanding the aforementioned duty of care as it relates to mentally ill inmates, Defendants treated TERRILL THOMAS in a manner that was extremely negligent, careless, reckless, and without concern for his safety.

83. That Defendants, in the face of TERRILL THOMAS's obvious need for medical attention and assistance, failed to obtain medical attention, failed to identify a medical emergency, and/or failed to act as prudently required.

84. Defendants failed to adequately train correctional staff and medical staff; failed to develop and implement proper policies and procedures for dealing with mentally ill inmates and/or high risk prisoners in the Justice Facility; failed to have some method, policy, practice, and/or procedure in regards to identifying medical emergencies pertaining to such inmates, and failed to have an intervention method, policy, practice, and/or procedure in regards to such inmates and/or high risk prisoners at the Justice Facility so that treatment could be obtained on a timely basis.

85. Defendants engaged in conduct that was so negligent, careless, and reckless that it demonstrated a substantial lack of concern by failing to appropriately implement policies and procedures concerning the training of correctional staff and/or medical staff regarding the processing and relaying of medical information and request for emergent

medical treatment and by failing to act on requests for emergent medical treatment, including, but not limited to:

a.  Failing to properly train the Justice Facility staff, including medical personnel providing medical care to inmates and persons in custody therein, to properly assess and determine when an inmate/person in custody is facing a medical emergency;

b.  Negligently, carelessly, and recklessly ignoring TERRILL THOMAS's immediate needs for medical treatment;

c.  Negligently, carelessly, and recklessly failing to transport TERRILL THOMAS to an appropriate hospital or mental health care facility for immediate medical care and treatment;

d.  Negligently, carelessly, and recklessly failing to seek appropriate medical attention for a man in distress due to advanced dehydration;

e.  Negligently, carelessly, and recklessly failing to seek appropriate medical attention for a cardiac arrest;

f.  Negligently, carelessly, and recklessly failing to render medical care to a man near death;

g.  Negligently, carelessly, and recklessly failing to notify appropriate doctors, nurses, and medical staff of TERRILL THOMAS's dehydrated state and obvious side effects therefrom;

h.  Negligently, carelessly, and recklessly hiring, training, maintaining, and implementing competent correctional staff at the Justice Facility;

i.  Negligently, carelessly, and recklessly hiring, training, maintaining, and implementing competent medical and mental health staff at the Justice Facility;

j.  Negligently, carelessly, and recklessly failing to discipline, instruct, supervise, and/or control the conduct of the correctional staff at the Justice Facility, thereby encouraging the wrongful acts and omissions complained of herein;

k.  Negligently, carelessly, and recklessly failing to discipline, instruct, supervise, and/or control the conduct of the medical staff at the Justice Facility, thereby encouraging the wrongful acts and omissions complained of herein;

l.  Negligently, carelessly, and recklessly allowing a custom and/or practice at the Justice Facility of deliberately ignoring complaints of inmates of their need for medical attention; and,

m.  Negligently, carelessly, and recklessly withholding required medical care to TERRILL THOMAS when they had actual knowledge TERRILL THOMAS had serious medical conditions requiring immediate attention

86. That as a direct and proximate result of the negligent and/or intentional constitutional violations alleged in the entire Complaint, the Plaintiffs suffered loss of companionship and society of their father, TERRILL THOMAS, and pecuniary loss of his estate, whose untimely death deprived them of said rights as sons, causing emotional distress, psychiatric distress, mental anguish, and anxiety, making said Defendants, jointly and severally, responsible in compensatory damages in an amount to be determined by the jury.

87. That, other than Milwaukee County, each defendant, jointly and severally, committed acts and conduct, a proximate cause of the death of TERRILL THOMAS intentionally,

recklessly and maliciously, making an award of punitive damages necessary and appropriate.

88. The Defendants, jointly and severally, including Milwaukee County, are responsible for reasonable costs and attorney's fees, pursuant to Title 42, § 1988.

WHEREFORE, the Plaintiffs respectfully demand judgment against the Defendants, jointly and severally, as follows:

1. An award of compensatory damages determined by the Jury;

2. An award of punitive damages determined by the Jury;

3. An award of attorneys' fees and costs, pursuant to Title 42 U.S.C. 1988, as awarded by the Court;

4. A Consent Decree specifically prohibiting the Defendants, jointly and severally, from ever depriving an inmate at the Milwaukee County Jail of hydration, and other conduct detrimental to the health and safety of mentally ill inmates, or other inmates who need water to sustain life; and

5. Any other further relief as this Honorable Court deems just and equitable.

**THE PLAINTIFFS HEREBY DEMAND A TRIAL BY JURY**

Dated at this 9th day of March, 2017.

By:   s/Walter W. Stern III
ATTY. WALTER W. STERN, III
Bar No. 1014060
920 85th St., Suite 123
Kenosha WI 53143
**Phone:** (262) 880-0192
**Email:** wstern1@wi.rr.com