**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**

| | | |
|---|---|---|
| ESTATE OF TERRILL J. THOMAS, by and through its special administrator, Tiffany Robertson, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| MILWAUKEE COUNTY, et al., | ) ) | Case No.: 17-CV-01128 |
| Defendants. | ) ) | Honorable Pamela Pepper |
| ———————————————— | ) ) | |
| MILWAUKEE COUNTY, | ) ) | |
| Third-Party Plaintiff, | ) ) | |
| v. | ) ) | |
| WISCONSIN COUNTY MUTUAL INSURANCE COMPANY, | ) ) ) | |
| Third-Party Defendant. | ) | |

## THIRD-PARTY PLAINTIFF MILWAUKEE COUNTY'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL BACKGROUND .................................................................................... 2

    I.     Plaintiff's Complaint and Indemnification Claim against the County................... 2

    II.    Coverage Provisions of the Insurance Policy ........................................................ 3

    III.   Exclusions Based on Criminal or Deliberately Wrongful Conduct....................... 4

    IV.   WCMIC's Reliance on the Criminal or Deliberate Wrong Exclusions to
          Deny Coverage to the County................................................................................ 5

LEGAL STANDARD................................................................................................ 7

ARGUMENT.............................................................................................................. 9

    I.     The County is Entitled to a Finding that the Policy Provides Coverage for
          Plaintiff's Indemnification Claim Against the County. ......................................... 9

          A.     Plaintiff's indemnification claim against the County falls within
                 the personal injury coverage provided under the Policy........................... 11

          B.     Plaintiff's indemnification claim against the County falls within
                 the errors and omissions coverage provided under the Policy.................. 14

    II.    The County is Entitled to a Finding that the Conduct of a County
          Employee Cannot be Imputed to the County for Purposes of Applying the
          Criminal or Deliberate Wrong Exclusions to Deny "Personal Injury" or
          "Errors and Omissions" Coverage to the County for the Plaintiff's
          Indemnification Claim Against the County. ......................................................... 16

          A.     Under the express language of the policy, WCMIC cannot impute
                 the conduct of a County employee to the County for purposes of
                 applying the Criminal or Deliberate Wrong Exclusions to the
                 County.................................................................................................... 16

          B.     Interpreting the policy as prohibiting WCMIC from imputing the
                 conduct of a County employee to the County for purposes of
                 applying the exclusions for criminal or deliberately wrongful
                 conduct to the County is consistent with case law interpreting
                 similar imputation provisions. ................................................................ 19

          C.     The County's interpretation of the Policy as prohibiting WCMIC
                 from imputing the conduct of a County employee to the County for

purposes of applying the Criminal or Deliberate Wrong Exclusions
to the County is consistent with public policy. ........................................ 23

CONCLUSION .................................................................................................................... 28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Med. Sec., Inc. v. Exec. Risk Specialty Ins. Co.*,
    393 F. Supp. 2d 693 (E.D. Wis. 2005)............................................................................7

*Frost ex rel. Anderson v. Whitbeck*,
    2002 WI 129, 257 Wis. 2d 80, 654 N.W.2d 225 ........................................... *passim*

*Arenson v. Nat'l Auto. & Cas. Ins. Co.*,
    45 Cal.2d 81, 286 P.2d 816 (1955) ........................................................................26

*Baltzar v. Williams*,
    254 So. 2d 470 (La. Ct. App. 1971)........................................................................25

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)..................................................................................................7

*Cont'l Ins. Co. v. Garrison*,
    54 F. Supp. 2d 874 (E.D. Wis. 1999)......................................................................7

*Dart Indus., Inc. v. Liberty Mut. Ins. Co.*,
    484 F.2d 1295 (9th Cir. 1973) .........................................................................26, 27

*Day v. Allstate Indem. Co.*,
    2011 WI 24, 332 Wis. 2d 571, 798 N.W.2d 199 ...................................................8, 9

*Design Basics LLC v. J&V Roberts Investments, Inc.*,
    130 F. Supp. 3d 1266 (E.D. Wis. 2015)..................................................................19

*Elliott v. Donahue*,
    169 Wis. 2d 310, 485 N.W.2d 403 (1992)................................................................9

*Federal Ins. Co. v. SafeNet*,
    817 F. Supp. 2d 290 (S.D.N.Y. 2011)...............................................................21, 22

*Folkman v. Quamme*,
    2003 WI 116, 264 Wis. 2d 617, 665 N.W.2d 857 ....................................................9

*Froedtert Mem'l Lutheran Hosp., Inc. v. Nat'l States Ins. Co.*,
    2009 WI 33, 317 Wis. 2d 54, 765 N.W.2d 251 ....................................7, 8, 11, 17

*Gilmore v. Fischer*,
    226 Wis. 2d 162, 594 N.W.2d 420 (Ct. App. 1999) ..............................................13

*In re HealthSouth Corp.*,
  308 F. Supp. 2d 1253 (N.D. Ala. 2004) ........................................................20, 21

*Hedtcke v. Sentry Ins. Co*,
  109 Wis.2d 461, 326 N.W.2d 727 (1982) ........................................................23, 24

*Hendrix v. Employers Mutual Liability Ins. Co.*,
  98 F. Supp. 84 (E.D.S.C. 1951), *rev'd on other grounds,* 199 F.2d 53 (4th Cir.
  1952) ........................................................................................................................24

*Johnson Controls, Inc. v. London Market*,
  325 Wis.2d 176, 784 N.W.2d 579 (2010) ................................................. *passim*

*Liebovich v. Minnesota Ins. Co.*,
  2008 WI 75, 310 Wis. 2d 751, 751 N.W.2d 764 ..................................8, 11, 12, 18

*Lifespan Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*,
  59 F. Supp. 3d 427 (D.R.I. 2014) ..........................................................................19, 20

*Martin v. County of Milwaukee*,
  No. 14-cv-200 (E.D. Wis.) .....................................................................................5, 6

*McPhee v. Am. Motorists Ins. Co.*,
  57 Wis. 2d 669, 205 N.W.2d 152 (1973) .................................................................7

*Murphy v. Keystone Steel & Wire Co., a Div. of Keystone Consol. Indus.*,
  61 F.3d 560 (7th Cir. 1995) ......................................................................................7

*Nuffer v. Ins. Co. of N. Am.*,
  236 Cal. App. 2d 349 (Ct. App. 1965) ..................................................................26

*Olson v. Farrar*,
  2012 WI 3, 338 Wis. 2d 215, 809 N.W.2d 1 (2012) ..........................................9, 10

*Plastics Eng'g Co. v. Liberty Mut. Ins. Co.*,
  315 Wis.2d 556, 759 N.W.2d 613 (2009) .................................................7, 17, 18

*Strauss v. Chubb Indem. Ins. Co.*,
  771 F.3d 1026 (7th Cir. 2014) ............................................................... *passim*

*Estate of Sustache v. Am. Family Mut. Ins. Co.*,
  2008 WI 87, 311 Wis. 2d 548, 751 N.W.2d 845 (2008).......................................10

*Tingstol Co. v. Rainbow Sales Inc.*,
  218 F.3d 770 (7th Cir.2000) ......................................................................................7

*TranSched Systems Ltd. v. Fed. Ins. Co.*,
  958 F. Supp. 2d 331 (D.R.I. 2013)...................................................................21, 22

*Vandenberg v. Cont'l Ins. Co.*,
2001 WI 85, 244 Wis. 2d 802, 628 N.W.2d 876 ...................................9

*Western Cas. & Sur. Co. v. Aponaug Mfg. Co.*,
197 F.2d 673 (5th Cir. 1952) ...................................25

*Wilson Mut. Ins. Co. v. Falk*,
2014 WI 136, 360 Wis. 2d 67, 857 N.W.2d 156 ...................................11

*Zenith Ins. Co. v. Employers Ins. of Wausau*,
141 F.3d 300 (7th Cir. 1998) ...................................8, 18

**Statutes**

42 U.S.C. § 1983...................................2, 10, 15

Cal. Ins. Code § 533...................................26, 27

Wis. Stat. § 895.46(1)(a)...................................3

**Other Authorities**

*Black's Law Dictionary* 801 (8th ed. 2004)...................................12

Fed. R. Civ. P. 56(a) ...................................7

U.S. Const. amend. XIV ................................... *passim*

*Webster's Third New International Dictionary* 1164 (3d ed. 2002)...................................11

Defendant and Third-Party Plaintiff, the County of Milwaukee (the "County"), submits this memorandum in support of its motion for summary judgment on the County's claim for declaratory judgment.

## PRELIMINARY STATEMENT

This third-party action arises out of a dispute between the County and Third-Party Defendant Wisconsin County Mutual Insurance Company ("WCMIC") concerning certain issues impacting the scope of coverage provided under an insurance policy issued by WCMIC to the County, specifically, Public Entity Liability Insurance Policy No. 14116 (the "Policy"). The Policy provides coverage for the indemnification claim asserted by Plaintiff, Estate of Terrill J. Thomas, against the County in the Complaint in this matter. WCMIC, however, has indicated its intent to invoke certain Policy exclusions to deny indemnification to the County. Specifically, to the extent any of the individual defendants who are County employees ("County Individual Defendants")[1] in this matter are ultimately determined to have committed criminal or deliberately wrongful acts during the scope of their employment with the County, WCMIC intends to deny coverage to the County for Plaintiff's indemnification claim by virtue of imputing such individual conduct to the County and invoking Policy exclusions to exclude coverage to the County.

The Policy does not permit the imputation to the County that WCMIC seeks, and WCMIC's attempt to deny coverage to the County on that basis is improper and contrary to the terms of the Policy. In fact, the Policy exclusions upon which WCMIC purports to rely specifically

---

[1] The County Individual Defendants in this matter are David A. Clarke Jr.; Nancy Evans; Kevin Nyklewicz; Scott Sobek; Jeffrey Andrykowski; Joshua Briggs; Steven Haw; Kashka Meadors; Devonta Townes; Rafael Brito; Matthew Carroll; Lecarlin Collins; Brian Dragoo; Anthony Emanuele; Jordon Johnson; Thomas Laine; David Ledger; Joshua Legere; Devin O'Donnell; James Ramsey-Guy; Decorie Smith; Dominique Smith; and John Weber. (*See* Statement of Proposed Material Facts ("SPF") ¶ 3.) This does not include any of the individual defendants employed by Armor Correctional Health Services, Inc., who are the following: Karen Horton; Karen Gray; Deborah Mayo; and Amanda Ocacio. (*See* SPF ¶ 4.)

prohibit the imputation of criminal conduct by an individual employee to the County for purposes of the application of the exclusions. Accordingly, and as set forth in greater detail below, the County is entitled to summary judgment findings that (1) to the extent the County Individual Defendants are found to be acting in the scope of their employment with the County, the Policy provides coverage for Plaintiff's indemnification claim against the County; and (2) the conduct of a County employee cannot be imputed to the County for purposes of applying the criminal or deliberate wrong exclusions to deny *personal injury* or *errors and omissions* coverage to the County for the Plaintiff's indemnification claim against the County.

**FACTUAL BACKGROUND**

**I.      Plaintiff's Complaint and Indemnification Claim against the County**

On August 14, 2017, Plaintiff filed its Complaint alleging violations under 42 U.S.C. § 1983 and the Americans with Disabilities Act. (SPF ¶¶ 1, 2.) Defendants, including the County, answered the Complaint on December 8, 2017. (SPF ¶ 11.) Shortly thereafter, on December 22, 2017, the County filed its Third Party Complaint. (SPF ¶ 12.)

Plaintiff alleges the County Individual Defendants "are liable under 42 U.S.C. § 1983 for violating Mr. Thomas' rights under the Fourteenth Amendment to the United States Constitution by denying him necessary medical and mental health care"; that each "acted objectively unreasonably, with a lack of professional judgment, and with deliberate indifference to Mr. Thomas' serious medical and mental health needs"; and that "[e]ach defendant was aware of the foreseeable risks associated with his or her actions and inactions, which resulted in Mr. Thomas' unnecessary suffering and death." (SPF ¶ 6.) Plaintiff also alleges the County Individual Defendants "are liable under 42 U.S.C. § 1983 for violating Mr. Thomas' Fourteenth Amendment rights by depriving him of the minimal civilized measure of life's necessities, including drinking water, edible food, a mattress, bedding, a working toilet, time out of his cell,

2

and a sanitary living environment"; that each "was aware of the foreseeable risks associated with his or her actions and inactions, which resulted in Mr. Thomas' unnecessary suffering and death"; and that each "acted objectively unreasonably and with deliberate indifference to those risks." (SPF ¶¶ 6, 9.)

As it relates to the County and the instant motion, Plaintiff alleges that the County is required under Wisconsin's indemnification statute, Wis. Stat. § 895.46(1)(a), "to pay or indemnify all judgments, including for compensatory and punitive damages, attorneys' fees, and costs that may be awarded against its officials and employees." (SPF ¶ 10.)

## II.    Coverage Provisions of the Insurance Policy

In December 2016, WCMIC issued the Policy, effective January 1, 2016 to January 1, 2017. (SPF ¶ 19.) The named insured as shown in the Policy Declaration is the County. (SPF ¶ 20.) The Policy also includes County employees and officials as *insureds* in certain circumstances. Specifically, the Policy lists the following as an *insured*[2]: (1) the County; and (2) the County's past and present employees or elected or appointed officials while acting within the scope of their employment. (SPF ¶¶ 21–22.) The Policy contains a "Separation of *Insureds*" provision which provides that each *insured*'s interests are separately covered: "Except with respect to the Limit of Insurance, and any rights or duties specifically assigned to the first Named Insured [the County], this insurance applies . . . [s]eparately to each *insured* against whom *claim* is made or *suit* is brought." (SPF ¶ 23.)

The Policy provides for three broad categories of coverage to each *insured*: (A) Coverage A - *Bodily Injury* and *Property Damage* caused by an *occurrence*; (B) Coverage B - *Personal Injury*; and (C) Coverage C - *Errors and Omissions*. (SPF ¶ 26.) *Bodily injury* is defined as

---

[2] Reference to "*insured*" and other words in italics in the instant memorandum mirrors the use of italics in the Policy.

"*bodily injury*, sickness, disability or disease, sustained by a person during the policy period, including death resulting from any of these at any time."  (SPF ¶ 27.)  *Personal injury* means "injury, other than *bodily injury*, during the policy period arising out of one or more" enumerated "offenses," including "[a]ssault and battery…[and]…civil rights violations…."  *Id*.  *Errors and omissions* "means any misstatement or misleading statement or act or omission or neglect or breach of duty during the policy period, including misfeasance, malfeasance and nonfeasance by an *insured* in their capacity as such."  *Id*.  For each of these three categories of coverage provided under the Policy, WCMIC has both a duty to defend and a duty to indemnify.  (SPF ¶¶ 33–34, 42.)

### III.    Exclusions Based on Criminal or Deliberately Wrongful Conduct

Section V of the Policy lists exclusions to coverage.  Three exclusions in the Policy preclude *personal injury* or *errors and omissions* coverage[3] to an insured based on criminal or deliberately wrongful conduct on the part of an insured (the "Criminal or Deliberate Wrong Exclusions").  For example, Section V, subsection L.3 provides as follows:

> This policy does not apply to:  . . .
>
> L.   Personal Injury . . .
>
>> 3.   Arising out of the intentional or knowing violation of a penal statute or ordinance committed by or with the consent of the *insured.*
>>
>> However, any fact pertaining to any one *insured* shall not be imputed to any other *insured* for the purpose of determining the application of this exclusion.

Similarly, Section V, subsections N.3 and N.4 provide:

> This policy does not apply to: . . .
>
> N.   *Errors and omissions* liability resulting in or arising from: . . .

---

[3] As discussed in greater detail below, the County seeks a finding only with respect to *personal injury* and *errors and omissions* coverage, not *bodily injury* coverage.  As such, only exclusions applicable to those coverage provisions and relevant to the County's motion for summary judgment are discussed herein.

3. The willful violation of a penal code or ordinance committed by or with the consent of any *insured*.

4. Any deliberately wrongful act, omission, or breach of duty committed by or with the consent of any *insured*. . . .

However, any fact pertaining to any one *insured* shall not be imputed to any other *insured* for the purpose of determining the application of parts (3) (4) and (5) of this exclusion.

(SPF ¶ 29.)

Per the above, the Criminal or Deliberate Wrong Exclusions for both the *personal injury* and *errors and omissions* coverage expressly prohibit imputing a fact pertaining to one *insured* to another *insured* for the purpose of determining whether the exclusion applies to bar coverage otherwise provided under the Policy.

## IV. WCMIC's Reliance on the Criminal or Deliberate Wrong Exclusions to Deny Coverage to the County

WCMIC issued a similar Public Entity Insurance Policy to the County in December 2012 (the "Martin Policy"), which has since been implicated in another matter. (SPF ¶ 43.) In *Martin v. County of Milwaukee*, No. 14-cv-200 (E.D. Wis.), the plaintiff, a County inmate, alleged that a County employee, Xander Thicklen, sexually assaulted her while in County custody. (SPF ¶ 45.) As here, in addition to civil rights violation claims, the plaintiff brought a state law indemnification claim against the County. (SPF ¶ 45.) The County timely tendered the *Martin* lawsuit to WCMIC for defense and indemnification under the Martin Policy, and WCMIC accepted the County's tender of the claim without any reservation of rights. (SPF ¶¶ 46–47.)

WCMIC also accepted a tender of claim from Thicklen, but subject to a reservation of rights, and later WCMIC intervened in *Martin*, seeking a declaration that it had no duty to defend or indemnify Thicklen for the claims asserted against him. (SPF ¶¶ 48–49.) In its motion for summary judgment on the issue, WCMIC argued that, pursuant to a penal exclusion set forth in

the Martin Policy, it had no duty to defend or indemnify Thicklen. (SPF ¶ 50.) The penal exclusion provides that the Martin Policy does not apply to personal injury "[a]rising out of the intentional or knowing violation of a penal statute or ordinance committed by or with the consent of the *insured*." *Id*. Thereafter, WCMIC sent a letter to the County asserting that, in the event that Thicklen was found to have committed criminal acts within the scope of his employment for the County, WCMIC would invoke the penal exclusion, and the summary judgment ruling in its favor, as a basis not to indemnify the County for the *Martin* plaintiff's indemnification claim. (SPF ¶ 53.) Specifically, WCMIC took the position that any deliberately wrongful conduct committed by Thicklen in the scope of his employment would be imputed to the County and provide a basis to invoke the penal exclusion as a basis to deny personal injury coverage to the County for the indemnification claim against it. *Id*. After the jury in *Martin* found Thicklen liable—and that the County was liable under the indemnification claim—WCMIC continued to reassert its denial of indemnity to the County on its imputation theory. (SPF ¶¶ 55–58.)

WCMIC intends to take the same coverage position here as it took in *Martin*. (SPF ¶¶ 61, 67.) After timely tendering its claim for defense and indemnification asserted in Plaintiff's Complaint to WCMIC, which WCMIC accepted without any reservation of rights, the County contacted WCMIC in order to ascertain its coverage position in this case, in light of the ongoing coverage dispute in *Martin*. (SPF ¶ 64–65.) In response, WCMIC would not confirm coverage for the County under the Policy, and cited the penal exclusions in the Policy as the basis for refusing to confirm coverage. (SPF ¶¶ 66–67.) Through its actions in *Martin* and this matter, WCMIC has indicated that it intends to argue that any deliberately wrongful and criminal conduct committed by County employees in the scope of their employment should be imputed to the

County, relying on the same penal exclusions as in *Martin* to deny indemnification coverage. (SPF ¶ 67.)

## LEGAL STANDARD

"A motion for summary judgment will be granted when there are no genuine issues as to material fact and the movant is entitled to judgment as a matter of law." *Cont'l Ins. Co. v. Garrison*, 54 F. Supp. 2d 874, 876 (E.D. Wis. 1999); *see also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); Fed. R. Civ. P. 56(a). "The interpretation of an insurance contract is a question of law." *Strauss v. Chubb Indem. Ins. Co.*, 771 F.3d 1026, 1030 (7th Cir. 2014) (citing *Plastics Eng'g Co. v. Liberty Mut. Ins. Co.*, 2009 WI 13, ¶ 27, 315 Wis. 2d 556, 759 N.W.2d 613). Indeed, "[s]ummary judgment can be particularly appropriate in contract actions where the disposition of the case involves the interpretation of a contract." *See Am. Med. Sec., Inc. v. Exec. Risk Specialty Ins. Co*., 393 F. Supp. 2d 693, 699 (E.D. Wis. 2005) (citing *Tingstol Co. v. Rainbow Sales Inc.*, 218 F.3d 770, 771–72 (7th Cir. 2000)); *see also Murphy v. Keystone Steel & Wire Co., a Div. of Keystone Consol. Indus.*, 61 F.3d 560, 564–65 (7th Cir. 1995).

The Court looks to state law in interpreting a contract, including an insurance policy. "In Wisconsin, insurance policies are interpreted under the same rules that apply to contract construction." *Strauss*, 771 F.3d at 1030. As a general rule, "language in an insurance contract is given its common, ordinary meaning." *Froedtert Mem'l Lutheran Hosp., Inc. v. Nat'l States Ins. Co.*, 2009 WI 33, ¶ 41, 317 Wis. 2d 54, 74, 765 N.W.2d 251, 260 (citing *Folkman v. Quamme*, 2003 WI 116, ¶ 17, 264 Wis. 2d 617, 665 N.W.2d 857). Wisconsin courts "interpret undefined words and phrases of an insurance policy as they would be understood by a reasonable insured." *Id.* "[T]he test is not what the insurer intended its words to mean but what a reasonable person in the position of an insured would have understood the words to mean." *McPhee v. Am. Motorists Ins. Co.*, 57 Wis. 2d 669, 676, 205 N.W.2d 152, 156-57 (1973); *see also Frost ex rel. Anderson v.*

*Whitbeck*, 2002 WI 129, ¶ 20, 257 Wis. 2d 80, 91, 654 N.W.2d 225, 230 ("Language in an insurance policy is construed as understood by a reasonable person in the position of an insured rather than as intended by the insurer.").

Furthermore, insurance contracts must be read as a whole, giving effect to all parts of the agreement. "Wisconsin courts frown on readings of contracts that make some words or sections entirely superfluous." *Zenith Ins. Co. v. Employers Ins. of Wausau*, 141 F.3d 300, 306 (7th Cir. 1998). "An insurance policy is to be construed, whenever possible, so as to give a reasonable meaning to each provision of the contract." *Day v. Allstate Indem. Co.*, 2011 WI 24, ¶ 27, 332 Wis. 2d 571, 585, 798 N.W.2d 199, 206 (internal quotations omitted). "Courts must avoid a construction which renders portions of a contract meaningless, inexplicable or mere surplusage." *Id.*; *see also Frost*, 2002 WI at ¶ 21 ("A construction of an insurance policy that gives reasonable meaning to every provision of the policy is preferable to one leaving part of the language useless or meaningless.").

"[W]hen the policy language is plain and unambiguous," Wisconsin courts enforce the contract "as written and 'without resorting to the rules of construction or principles from case law.'" *Strauss*, 771 F.3d at 1030 (citing *Johnson Controls, Inc. v. London Market*, 2010 WI 52, ¶ 26, 325 Wis. 2d 176, 784 N.W.2d 579, 586 ). And when the language is ambiguous, it is construed in favor of coverage. *Froedtert*, 2009 WI at ¶ 41; *see also Liebovich v. Minn. Ins. Co.*, 2008 WI 75, ¶ 32, 310 Wis. 2d 751, 773, 751 N.W.2d 764, 774 ("[I]nsurance policies are construed strictly in favor of coverage, and ambiguities are to be construed against the drafter."). Wisconsin courts resort to this construction rule when necessary because they recognize that, as drafters of the contract, insurers have an advantage over the insureds. *See, e.g., id.* at ¶ 43 ("Because the insurer is in a position to write its insurance contracts with the exact language it chooses—so long as the

language conforms to statutory and administrative law—ambiguity in that language is construed in favor of an insured seeking coverage."); *Folkman*, 2003 WI at ¶ 18 ("A clearly written policy promotes a good relationship between the insurer and the insured and protects the insured from future misunderstandings. The insurer's best defense against an unwarranted but appealing claim is an unambiguous policy."). Thus, "[w]hen there are two competing interpretations of a policy which are conflicting but both are reasonable, Wisconsin courts defer to the interpretation of the insured, not the drafter." *Id.* at ¶ 32.

This is particularly true with respect to exclusions in a policy. "A basic canon of construction in Wisconsin is that exclusions in an insurance policy are narrowly construed against the insurer." *Day*, 2011 WI at ¶ 29 (citing *Whirlpool Corp. v. Ziebert*, 197 Wis. 2d 144, 152, 539 N.W.2d 883 (1995)); *see also Vandenberg v. Cont'l Ins. Co.*, 2001 WI 85, ¶ 40, 244 Wis. 2d 802, 825, 628 N.W.2d 876, 887 ("Policy provisions tending to limit liability are narrowly construed against the insurer."). "A court will enforce exclusions that are clear from the face of the policy." *Id.* "However, if the effect of an exclusion is ambiguous or uncertain, it will be construed in favor of coverage." *Id.*

## ARGUMENT

I.    **The County is Entitled to a Finding that the Policy Provides Coverage for Plaintiff's Indemnification Claim Against the County.**

The County is entitled to summary judgment on the coverage issue because coverage is determined as a matter of law, based solely on the allegations in Plaintiff's complaint, not the merits of the allegations. *Olson v. Farrar*, 2012 WI 3, ¶ 29, 338 Wis. 2d 215, 809 N.W.2d 1 ("The duty of defense depends on the nature of the claim and has nothing to do with the merits of the claim.") (quoting *Elliott v. Donahue*, 169 Wis. 2d 310, 321, 485 N.W.2d 403 (1992)). "The insurer is under an obligation to defend only if it could be held bound to indemnify the insured, assuming

that the injured person proved the allegations of the complaint, regardless of the actual outcome of the case." *Estate of Sustache v. Am. Family Mut. Ins. Co.*, 2008 WI 87, ¶ 22, 311 Wis. 2d 548, 561, 751 N.W.2d 845 (quoting *Grieb v. Citizens Cas. Co. of New York*, 33 Wis. 2d 552, 558, 148 N.W.2d 103 (1967)); *see also Olson*, 2012 WI at ¶ 29 (same). As such, the Court need look to only the allegations in Plaintiff's complaint to determine whether the insured, the County, has coverage if the Plaintiff prevails in its indemnification claim.[4]

As set forth more fully below, Plaintiff's indemnification claim against the County clearly falls within both the *personal injury* and *errors and omissions* coverage of the Policy. Plaintiff's Section 1983 civil rights claims against the County Individual Defendants and derivative indemnification claim against the County seek damages for the alleged violation of Mr. Thomas' rights. Such a violation of rights is a claim for *personal injury* liability, as defined by the Policy; it also constitutes a claim for *errors and omissions* liability. Accordingly, to the extent the County Individual Defendants are found to be acting within the scope of their employment with the County, the County is entitled to a finding that the Policy provides coverage under either category of coverage for Plaintiff's indemnification claim against the County.[5]

---

[4] To prevail on its indemnification claim against the County, Plaintiff would have to show, as alleged in Plaintiff's complaint, that the individuals whose conduct Plaintiff complains of, and who Plaintiff alleges caused harm to Plaintiff, were County employees acting within the scope of their employment with the County. But for purposes of resolving this motion for summary judgment, the Court need not address the issue of whether the individuals at issue were County employees acting within the scope of their employment with the County, because this motion seeks a ruling that, to the extent the County is found liable on the indemnification claim (which would require a finding that the individuals who committed the conduct at issue were acting within the scope of their employment), the policy provides coverage for that liability.

[5] While Plaintiff's indemnification claim against the County also could be construed as seeking damages on account of *bodily injury*, the claim also falls within the *personal injury* and *errors and omissions* coverage of the Policy, separate from and beyond any claim related to *bodily injury*. At this time, the County seeks findings only with respect to the coverage provided for *personal injury* and *errors and omissions*, in part because of the nature of WCMIC's denial of coverage to date.

A. **Plaintiff's indemnification claim against the County falls within the *personal injury* coverage provided under the Policy.**

The Policy defines *personal injury* as "injury, other than *bodily injury* . . . arising out of one or more" of a list offenses, including assault, battery, and civil rights violations.  (SPF ¶ 27.)  Accordingly, for Plaintiff's claims to fall within the definition of *personal injury*, it must allege an injury, that the injury is "other than bodily injury," and that the injury arises out of one of the listed offenses.  Plaintiff has alleged each of these.

First, Plaintiff has alleged an "injury, other than *bodily injury*," triggering coverage pursuant to the *personal injury* provision of the Policy.  The Policy does not define the word "injury."  However, a reasonable insured would understand the common and ordinary meaning of the word "injury" to include a violation of one's rights.  *Froedtert*, 2009 WI at ¶ 40 (Wisconsin courts "interpret undefined words and phrases of an insurance policy as they would be understood by a reasonable insured.") (quoting *Acuity v. Bagadia*, 2008 WI 62, ¶ 13, 310 Wis. 2d 197, 750 N.W.2d 817).  Courts often look to the dictionary for guidance as to the ordinary meaning of an undefined term in an insurance policy.  *See, e.g.*, *Wilson Mut. Ins. Co. v. Falk*, 2014 WI 136, ¶ 30, 360 Wis. 2d 67, 87, 857 N.W.2d 156, 165.  The dictionary defines "injury" to include a "violation of another's rights for which the law allows an action to recover damages."  *Webster's Third New International Dictionary* 1164 (3d ed. 2002).

Indeed, the Supreme Court of Wisconsin has applied this reasoning to conclude that a violation of rights can constitute an "injury," as used in an insurance policy, based on the dictionary definition of the word.  *See, e.g.*, *Liebovich*, 2008 WI at ¶ 38.  In *Liebovich*, the Wisconsin Supreme Court analyzed whether the insurer violated its duty to defend in denying liability coverage to Liebovich, the insured.  *Id*. at ¶ 2.  The court ultimately found that the complaint filed against the insured (from which the insured sought coverage) "contained the requisite allegations of an

occurrence, injury, and damages triggering [the insurer's] responsibilities under the policy." *Id.* As to the issue of injury, the Supreme Court of Wisconsin found the complaint alleged an "injury" as required by the insurance policy where plaintiffs alleged an actionable violation of plaintiffs' interests and rights. *Id.* at ¶ 38. The court looked to the dictionary for guidance, finding the "common definition of injury is 'an act that damages, harms or hurts…[;] a violation of another's rights for which the law allows an action to recover damages…,'" quoting *Webster's* dictionary. *Id.* at ¶ 38. *Black's Law Dictionary* revealed a similar definition, "defin[ing] 'injury' as…[t]he violation of another's legal right, for which the law provides a remedy." *Id.* (quoting *Black's Law Dictionary* 801 (8th ed. 2004)). Based on these definitions, the court rejected the insurer's argument for an interpretation of "injury" limited to only certain property interests, explaining that "[n]othing in the text of the policy precludes injuries that include other violations of property interests from being covered as well." *Id.* at ¶ 39.

Here, the Policy's *personal injury* provision provides coverage for "injury, other than *bodily injury*." (SPF ¶ 27.) Plaintiff alleges that the County Individual Defendants "violat[ed] Mr. Thomas' rights under the Fourteenth Amendment to the United States Constitution." (SPF ¶ 6.) Based on the dictionary definition and as recognized by the Supreme Court of Wisconsin, this injury is an "injury, other than *bodily injury*" under the *personal injury* provision of the Policy. Furthermore, a violation of rights is an injury separate and distinct from the definition of *bodily injury*. (SPF ¶ 27 ("*Bodily injury* means bodily injury, sickness, disability or disease . . . .")); *see also Frost*, 2002 WI at ¶ 21 ("A construction of an insurance policy that gives reasonable meaning to every provision of the policy is preferable to one leaving part of the language useless or meaningless."). Thus, interpreting "injury" within the meaning of the Policy's *personal injury* provision to include a violation of rights distinct from bodily injury serves to avoid rendering the

provision "useless or meaningless," and results in precisely the coverage reasonably contemplated by the Policy.

In addition to establishing that the *personal injury* provision contemplates the type of "injury" Plaintiff alleges, Plaintiff's allegations must also satisfy the second portion of the *personal injury* coverage provision—that the injury arises out of one of the listed offenses. They do, in two ways. First, Plaintiff alleges its injury arises from "[a] civil rights violation[]," as described in the Policy. (SPF ¶ 27.) Plaintiff expressly alleges injury—a violation of rights—arising from a violation of Mr. Thomas' civil rights afforded under the Fourteenth Amendment. (SPF ¶ 6.)

Second, Plaintiff also alleges injury—again, a violation of rights—arising from conduct constituting assault and battery by various County Individual Defendants. Under Wisconsin law, "[a]n assault is an intentional attempt, by force or violence, to physically harm another." *Gilmore v. Fischer*, 226 Wis. 2d 162, 594 N.W.2d 420 (Wis. Ct. App. 1999) (internal citations omitted). A battery is an assault carried out to completion. *Id.* Unlike a claim for assault, a claim for battery does not require proof of intent or desire to harm. *Id.* Plaintiff has alleged the individual defendants intentionally attempted to and did cause physical harm to Mr. Thomas by force, thus alleging both assault and battery. Specifically, Plaintiff alleges the individual defendants "forced [Mr. Thomas] to spend the last week of his life locked in an isolation cell 24 hours a day, with no drinking water, no edible food, no working toilet, no mattress, no blanket, no shower access, no means of cleaning his cell, no ability to communication with his family, no relief from constant lockdown, and no meaningful access to urgently needed medical or mental health care." (SPF ¶ 9.) Plaintiff alleges further that the individual defendants "obviously knew that depriving a person of water for an extended period causes serious harm and eventually leads to death," and that such actions "resulted in Mr. Thomas' unnecessary suffering and death." (SPF ¶ 9.)

The Policy language is plain and unambiguous, requiring enforcement of the contract as written. *See Strauss*, 771 F.3d at 1030 (citing *Johnson Controls, Inc.*, 2010 WI at ¶ 26). It is not the role of the court to alter unambiguous terms of the policy, but rather to interpret it as written. *Id.* at 1033. As written, the Policy provides coverage for *personal injury* liability for "injury, other than *bodily injury*, during the policy period arising out of one or more of the following offenses," including "[a]ssault and battery…[and]…civil rights violations." (SPF ¶ 27.) Plaintiff's Complaint alleges both aspects of the *personal injury* coverage provision, alleging injury in the form of a violation of rights, arising out of the County Individual Defendants' alleged deprivation of Mr. Thomas' Fourteenth Amendment rights, as well as the alleged assault and battery by the County Individual Defendants. Therefore, to the extent the County Individual Defendants are found to be acting in the scope of their employment with the County, the County is entitled to a finding that Plaintiff's indemnification claim against the County falls within *personal injury* coverage under the Policy.

**B.      Plaintiff's indemnification claim against the County falls within the *errors and omissions* coverage provided under the Policy.**

Plaintiff's indemnification claim against the County also falls within the Policy's *errors and omissions* coverage provision. *Errors and omissions* is defined as "any . . . act or omission or neglect or breach of duty during the policy period, including misfeasance, malfeasance and nonfeasance by an insured in their capacity as such." (SPF ¶ 27.) Plaintiff's claims fall squarely within the Policy definition of *errors and omissions*.

As an initial matter, by alleging that the County Individual Defendants were acting within the scope of their employment in their capacity as employees of the County (SPF ¶ 5), the County Individual Defendants are "*insureds*" within the meaning of the Policy. (SPF ¶ 21) ("*Insured*" means…[y]*our* "past or present employees or elected or appointed officials while acting within the

scope of their employment…").  Thus, the allegations against the County Individual Defendants satisfy the second portion of the *errors and omissions* provision, establishing coverage for any "act or omission…by an insured in their capacity as such."  (SPF ¶ 27.)

Further, Plaintiff has alleged multiple acts and omissions during the policy period by the County Individual Defendants that qualify for the Policy's *errors and omissions* coverage. Specifically, Plaintiff alleges that the individual defendants, including the County Individual Defendants, "are liable under 42 U.S.C. § 1983 for violating Mr. Thomas' rights under the Fourteenth Amendment…by denying him necessary medical and mental health care."  (SPF ¶ 6.) In support of that claim, Plaintiff alleges, for example, that the County Individual Defendants, with the exception of David A. Clarke Jr., Nancy Evans, and Kevin Nyklewicz, failed to take "any action to obtain medical or mental health care for Mr. Thomas."  (SPF ¶ 7.)  Plaintiff also alleges that the County Individual Defendants are liable under Section 1983 for "violating Mr. Thomas' Fourteenth Amendment rights by depriving him of the minimal civilized measure of life's necessities…."  (SPF ¶ 6.)  In support of that claim, Plaintiff alleges, for example, "no defendant attempted to provide Mr. Thomas with the[] bare minimal necessities of civilized life."  (SPF ¶ 8.) And "[t]he defendant guards [certain of the County Individual Defendants] were aware that Mr. Thomas had no mattress or other bedding, in violation of jail policy.  However, none of them documented that fact or took any steps to address the violation." *Id*.  As to both claims, Plaintiff further alleges each Individual Defendant was aware of the foreseeable risks associated with his or her actions and inactions, which resulted in Mr. Thomas' unnecessary suffering and death.  (SPF ¶ 6.)  In sum, the Complaint alleges multiple instances of an "act or omission or neglect or breach of duty during the policy period, including misfeasance, malfeasance and nonfeasance by an insured in their capacity as such," triggering Policy coverage for *errors and omissions* liability.

As with the *personal injury* coverage provision, the *errors and omissions* Policy language is plain and unambiguous, requiring enforcement of the contract as written. *See Strauss*, 771 F.3d at 1030 (citing *Johnson Controls, Inc.*, 2010 WI at ¶ 26). It provides coverage for *errors and omissions* liability for "any . . . act or omission or neglect or breach of duty during the policy period, including misfeasance, malfeasance and nonfeasance by an insured in their capacity as such." (SPF ¶ 27.) As detailed above, Plaintiff's Complaint alleges both aspects of the *errors and omissions* coverage provision, alleging acts and omissions on the part of the County Individual Defendants, in their capacities as County employees. Therefore, to the extent the County Individual Defendants are found to be acting in the scope of their employment with the County, the County is entitled to a finding that Plaintiff's indemnification claim against the County also falls within the *errors and omissions* coverage provided under the Policy.

II. **The County is Entitled to a Finding that the Conduct of a County Employee Cannot be Imputed to the County for Purposes of Applying the Criminal or Deliberate Wrong Exclusions to Deny "*Personal Injury*" or "*Errors and Omissions*" Coverage to the County for the Plaintiff's Indemnification Claim Against the County.**

  A. **Under the express language of the policy, WCMIC cannot impute the conduct of a County employee to the County for purposes of applying the Criminal or Deliberate Wrong Exclusions to the County.**

To the extent any of the County Individual Defendants in this matter are ultimately determined to have committed criminal or deliberately wrongful acts during the scope of their employment with the County, WCMIC intends to deny coverage by invoking certain Policy exclusions under the *personal injury* and *errors and omissions* coverage provisions. (*See* SPF ¶¶ 58, 64.) Both the *personal injury* and *errors and omissions* provisions exclude coverage for the willful or intentional and knowing "violation of a penal code or ordinance committed by or with the consent of any *insured*." (SPF ¶ 29.) There is also an exclusion to *errors and omissions* coverage for "[a]ny deliberately wrongful act, omission or breach of duty committed by or with

the consent of any *insured*." *Id.* Critically, however, each of these exclusions has a provision making clear that facts pertaining "to any one *insured* shall not be imputed to any other *insured* for the purpose of determining the application of th[e] exclusion." ("No-Imputation Provisions") *Id.* Wisconsin law mandates that courts give effect to the plain and ordinary meaning of this language in the insurance contract. *See, e.g.*, *Plastics Eng'g. Co.*, 2009 WI at ¶ 31.

A reasonable insured would understand the No-Imputation Provisions to mean that facts related to a County employee, as one insured, cannot be imputed to the County, another insured, for the purpose of determining whether the exclusions apply to bar coverage to the County. *Frost*, 2002 WI at ¶ 20 ("The reasonable expectations of coverage of an insured should be furthered by the interpretation given.") (citing *Kremers-Urban Co. v. Am. Emp'rs Ins. Co.*, 119 Wis. 2d 722, 735, 351 N.W.2d 156 (1984)). There is no other reasonable interpretation of the No-Imputation Provisions. For the same reason, the No-Imputation Provisions are not ambiguous and must be enforced as written. *Cf. Froedtert*, 2009 WI at ¶ 41 (Insurance policies are ambiguous if the words or provisions of the policy are "capable of 'more than one reasonable meaning.'") (citing *Lisowski v. Hastings Mut. Ins. Co*., 2009 WI 11, ¶ 9, 315 Wis. 2d 388, 759 N.W.2d 754). Although WCMIC undoubtedly would prefer to have limited the coverage provided under the Policy, "court[s] will not rewrite the contract…to release the insurer from a risk it could have avoided through a more foresighted drafting of the policy." *Strauss*, 771 F.3d at 1033 (internal quotation marks omitted); *see also Johnson Controls,* 2010 WI at ¶ 42 ("[W]e refuse to rewrite insurance contracts by filling in gaps left in the draftsmanship. Rather, we look to the policy language itself, as it would be understood by a reasonable insured."). The language of the No-Imputation Provisions is unambiguous—it does not permit the imputation WCMIC intends to impose on the County—and

that no-imputation language must "guide[] the analysis and determine[] whether coverage exists." *Strauss,* 771 F.3d at 1031 (listing cases).

In fact, if interpreted otherwise, the No-Imputation Provisions would become superfluous. Wisconsin courts interpret language in a contract to give it meaning, not render it meaningless. *Zenith Ins. Co.*, 141 F.3d at 306. Allowing WCMIC to deny coverage under the Criminal or Deliberate Wrong Exclusions based on the imputation of conduct by one insured (an Individual Defendant, a County employee) to another insured (the County) ignores the plain language of the exclusion and would effectively read the No-Imputation Provisions out of the policy.

Further, even if the exclusions were ambiguous—which they are not—they must be construed narrowly against WCMIC as the drafter of the policy, and in favor of coverage. *See, e.g.*, *Liebovich*, 2008 WI at ¶ 53 (interpreting ambiguous exclusion against the insurer and in favor of drafter); *Frost*, 2002 WI at ¶ 33 (interpreting ambiguous term in favor of coverage, noting that insurer "could have defined the word [] in the policy, but it did not"); *Johnson Controls*, 2010 WI at ¶ 43 (interpreting excess policy's following form provision in favor of coverage and against the insured where it was unclear whether the provision incorporated the underlying policy's duty to defend); *Plastics Eng'g Co.*, 2009 WI at ¶ 31 ("[E]ven if we were to conclude that there is more than one reasonable interpretation of this policy language, the policy is still construed in favor of affording coverage to the insured"). In other words, even if the exclusions were susceptible to an alternative, reasonable interpretation, the County would nevertheless be entitled to the interpretation it seeks as the insured since the insurer bears the burden as the drafter.

In short, the express language of the Criminal or Deliberate Wrong exclusions, including the No-Imputation Provisions, permits only one reasonable interpretation—that the imputation of any fact pertaining to any one *insured* to any other *insured* for the purpose of determining the

application of the exclusions is prohibited.  (SPF ¶ 29.)  Accordingly, the County is entitled to a finding that the conduct of one insured, a County employee, cannot be imputed to another insured, the County, for purposes of applying the Criminal or Deliberate Wrong exclusions to deny coverage under the Policy.

> **B.** **Interpreting the policy as prohibiting WCMIC from imputing the conduct of a County employee to the County for purposes of applying the exclusions for criminal or deliberately wrongful conduct to the County is consistent with case law interpreting similar imputation provisions.**

Although the County was unable to locate any decisions from Wisconsin courts interpreting No-Imputation Provisions like the ones in the policy here, decisions from other jurisdictions provide persuasive authority supporting the County's interpretation.  *See Design Basics LLC v. J&V Roberts Investments, Inc.*, 130 F. Supp. 3d 1266, 1285 (E.D. Wis. 2015) ("Wisconsin courts have not interpreted and applied the [policy provision at issue], 'the Court looks to other jurisdictions for persuasive authority.'").  These courts have found that where a policy provides coverage for an employer and its employees, and contains a provision prohibiting imputation of facts related to one insured to another insured for the purposes of determining coverage as to the employer, the plain and ordinary language of the no-imputation provision prohibits the imputation of facts related to the employee to the employer for purposes of denying coverage to the employer.

For example, in *Lifespan Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 59 F. Supp. 3d 427 (D.R.I. 2014), a corporation was held liable on an indemnification claim for damages awarded to a third party for the misconduct of the corporation's CFO.  *Id*. at 433.  The corporation sought indemnity for the judgment from its insurers, and moved for summary judgment on its interpretation of the imputation language of the applicable policy.  *Id*. at 436.  The insurers argued coverage was precluded by Unlawful Advantage and Deliberate Fraudulent Act Exclusions.  *Id*. at

442–44. These exclusions included a no-imputation provision similar to the No-Imputation Provisions in the WCMIC Policy: "The Wrongful Act of an Insured shall not be imputed to any other Insured for the purpose of determining the applicability of the [Unlawful Advantage and Deliberate Fraudulent Act] exclusions." *Id.* at 442. The court concluded that the insured had sustained its burden on summary judgment, specifically finding that the no-imputation provision operated as a clear exception to the exclusion. The court ruled that the plain and ordinary meaning of the no-imputation language prevented imputing the misconduct of the CFO to the corporation for purposes of applying the exclusions. *Id.* at 446.

Similarly, in *In re HealthSouth Corp.*, 308 F. Supp. 2d 1253 (N.D. Ala. 2004), a district court held that by the plain language of a no-imputation provision, an insurer could not impute the knowledge, statements or information of an employee (one insured) to an employer (another insured) in order to establish grounds for rescission of coverage as to the insurer based on misrepresentations made in an application for insurance. *Id*. at 1287. The employer in *In re HealthSouth* had a policy that provided coverage for "all sums which the Insured shall become legally obligated to pay as Damages on account of any claim made against the Insured for any Wrongful Act." *Id.* at 1263–64. The policy defined "Insured" to include HealthSouth and its directors, officers and employees. *Id.* at 1264. The insurer sought rescission of the policy, claiming HealthSouth used false and misleading information to procure insurance coverage. *Id.* at 1257. The policy included a severability clause which provided that "[n]o statement in the application or knowledge or information possessed by an Insured shall be imputed to any other Insured for the purpose of determining the availability of coverage hereunder." *Id.* at 1286. The court considered only the legal question of what effect the severability clause had on the insurance policy. *Id.* at 1287–88. The court held that the "language [in the severability clause] could not be

20

plainer," and therefore, that "[n]o statement by one insured in the application can be imputed to another insured; no knowledge of one insured can be imputed to another insured; no information possessed by one insured can be imputed to another insured." *Id.* at 1287. With regard to the claims for rescission against HealthSouth, the court held that "no statement or knowledge or information of any other insured can be imputed to HealthSouth." *Id.* at 1290.

Still more courts have ruled similarly with regard to no-imputation policy provisions that are less straightforward than those at issue in the instant matter. For example, the district courts in *Fed. Ins. Co. v. SafeNet, Inc.*, 817 F. Supp. 2d 290 (S.D.N.Y. 2011), and *TranSched Systems Ltd. v. Fed. Ins. Co.*, 958 F. Supp. 2d 331 (D.R.I. 2013) considered similar provisions that limited, though not entirely prohibited, imputation of facts from one insured to another insured and held that, based on the plain language of the provisions, facts related to an employee-insured could not be imputed to the employer-insured to determine coverage as to the employer. In *Federal Ins. Co.*, the company had an insurance policy that provided coverage to it and its directors and officers. 817 F. Supp. 2d at 293. The policy included exclusions for losses arising out of the wrongfully attained profits or the deliberate fraudulent act established by a judgment adverse to the Insured. *Id.* at 295. The policy also provided that, for the purpose of determining the applicability of these exclusions, "only facts pertaining to and knowledge possessed by any past, present or future chairman of the board, president, chief executive officer, chief operating officer, chief financial officer, or General Counsel . . . of an Organization shall be imputed to an Organization." *Id.* The company and its CFO sought coverage for various civil and criminal claims against them related to alleged securities fraud, which the insurers denied under the wrongfully attained profits and deliberate fraudulent act exclusions. *Id.* at 297–98. On the parties' cross motions for summary judgment, the court found that coverage was barred as to the CFO because the losses arose from a

fraudulent act established by an adverse judgment entered against her. *Id.* at 303. With regard to the company, however, the court held that the exclusion did not apply because the imputation provision did not allow the adverse judgment entered against the CFO to be imputed to the company for purposes of applying the exclusion; it allowed the imputation only of facts and knowledge. *Id.* at 303–04.

In *TranSched Systems Ltd.*, the district court also applied a provision that limited the imputation of facts from one insured to another. In the underlying suit, a jury found that the insured corporation's, Versyss Transit Solutions, LLC ("Versyss"), Vice President and CTO had made material misrepresentations in negotiations of an agreement with TranSched and awarded damages for which Versyss became liable. *TranSched Systems Ltd.*, 958 F. Supp. 2d at 333. TranSched then sought recovery of the award from Versyss' insurer. *Id.* The insurer denied any duty to indemnify Versyss based on, among other things, a fraudulent act exclusion in the policy which barred coverage for losses arising from "any deliberately fraudulent act . . . by such Insured." *Id.* at 336–37. The insurer argued that the Vice President and CTO's material misrepresentations triggered the exclusion and barred coverage as to Versyss. *Id.* at 335–36. The court, however, disagreed, as the policy also contained a "Severability of Exclusions" clause which provided that, with respect to the fraud exclusion, "only facts pertaining to and knowledge possessed by any past, present or future Chief Financial Officer, President, Chief Executive Officer or Chairperson of any Insured Organization shall be imputed to any Insured Organization to determine if coverage is available." *Id.* at 337. The court found that, by using the term "such Insureds," the exclusion was focused on deliberate fraud committed by the particular Insured seeking coverage. *Id.* It also recognized that, "as a corporation, Versyss does not commit deliberate fraud on its own; it acts through employees," but looked to the Severability of Exclusions clause in the policy for guidance

as to which employees' conduct could be imputed to the corporation to determine if coverage were available. *Id.* Ultimately, the court found that the exclusion did not bar coverage to Versyss based on the conduct of the Vice President and CTO because only deliberately fraudulent acts of the CFO, President, CEO or Chairperson could be imputed to the corporation to determine coverage. *Id.*

In sum, numerous courts have repeatedly held that insurance policy exclusions containing no-imputation exceptions to exclusions—such as those at issue in the instant case—will be interpreted and construed as written. The same is required for the No-Imputation Provisions in the Criminal and Deliberate Wrong exclusions in WCMIC's Policy.

 **C. The County's interpretation of the Policy as prohibiting WCMIC from imputing the conduct of a County employee to the County for purposes of applying the Criminal or Deliberate Wrong Exclusions to the County is consistent with public policy.**

Public policy accounts for and permits the interpretation the County seeks today. Numerous courts have recognized that the principle of individual responsibility for wrongdoing permits recovery by an innocent insured under an applicable insurance policy even where a co-insured committed wrongdoing that prohibits recovery for that co-insured.

Although Wisconsin courts have not yet considered the precise issue, it follows from the Supreme Court of Wisconsin's opinion in *Hedtcke v. Sentry Ins. Co*, 109 Wis. 2d 461, 326 N.W.2d 727 (1982), that a policy providing coverage to an employer for losses caused by the intentional acts of its employees for which it becomes legally obligated to pay, solely based on vicarious liability, is also consistent with public policy. The Supreme Court of Wisconsin held that the principle of fortuitousness—that insurance covers fortuitous losses and that losses are not fortuitous if the damage is caused by the insured—is not inconsistent with allowing an innocent insured to recover for damages caused by the intentional acts of a co-insured. *Hedtcke*, 109 Wis.

2d at 483–484, 489.  The court further held that, when determining whether an innocent insured is entitled to coverage for a loss caused by a co-insured, courts should no longer focus on the nature of the relationship between the insureds but, rather, must look to the language of the policy at issue.  *Id.* at 486.  In so doing, the *Hedtcke* court adopted the "modern rule," which "permit[s] recovery by innocent insureds," even where a co-insured engaged in wrongdoing barring coverage as to that co-insured.  *Id.* at 485.  The Supreme Court also acknowledged that courts adopting the "modern rule" had "fashioned it to effectuate the public policy that guilty persons must not profit from their wrongdoing," and to "recognize the fundamental principle of individual responsibility for wrongdoing."  *Id.* at 488.

Other courts have found that insurance for a loss predicated upon vicarious liability, and not upon the city or employer's own intentional acts, is not against public policy.  In *Hendrix v. Employers Mutual Liability Ins. Co.*, 98 F. Supp. 84 (E.D.S.C. 1951), *rev'd on other grounds,* 199 F.2d 53 (4th Cir. 1952), a landowner was held vicariously liable for the battery, assault and slander committed by the manager of his land within the scope of his employment.  *Id.* at 87.  The landowner's insurance policy provided coverage for the "sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness, or disease . . . sustained by any person."  *Id.* at 85.  The court considered whether such a policy was against public policy and, distinguishing between liability for one's own wrongdoing and vicarious liability for the wrongdoing of another, held that it was not.  *Id.* at 87.  The court explained:

> It is true, as a general proposition of law, that public policy will not permit an insured to be indemnified for liability incurred by his own unlawful act. *Farm Bureau Mut. Automobile Ins. Co. v Hammer*, 177 F.2d 793 (4th Cir. 1949). It is, therefore, necessary to determine whether the counterclaims sought to recover from the plaintiff on account of his personal wrong-doing, or whether they sought to hold him for damages because of the wrong-doing of his agent, under the doctrine of respondeat superior. Indemnity for the latter is not contrary to public policy, because the insured in such a case is

24

guilty of no wrong-doing, but simply has the misfortune to be legally responsible for the wrong-doing of another.

*Id*.

Similarly, in *Western Cas. & Sur. Co. v. Aponaug Mfg. Co.*, 197 F.2d 673 (5th Cir. 1952), the Fifth Circuit held that a corporation was entitled to coverage for damages paid in a suit against it for injuries caused by the intentional acts of its president. *Id*. at 674. The policy at issue included an exclusion for assault and battery "committed by or at the direction of the insured," and "insured" was defined to include both the corporation and the president. *Id*. The court acknowledged that the exclusion "was inserted out of deference to the question of public policy involved in insurance indemnifying against an insured's wilful act." *Id*. The court nevertheless held that "the insured" referred to the particular insured at issue and, per the language of the exclusion, assault or battery committed by or at the direction of the president could not be imputed to the corporation for purposes of applying the exclusion. *Id*.

In *Baltzar v. Williams*, 254 So. 2d 470 (La. Ct. App. 1971), an appellate court in Louisiana recognized this policy, too, explaining:

> It is an elementary principle of public policy that no person can insure against his own intentional acts. However, an employer must be given the opportunity to protect himself against harm to any unknown victims who might be endangered through the activity in which the employer is engaged. Frequently, the nature of the activity will require that employees be in a position that their presence will result in the danger of intentional harm to innocent persons.

*Id.* The court then discussed how this policy had been applied by Louisiana courts. It recognized "a rule…in [Louisiana's] favor of giving coverage to an employer for intentional acts committed by the employee." *Id.* It stated further that "it is settled law of this jurisdiction that in every contract of insurance where there is not a specific exclusion and a resulting intelligent waiver by the employer, an insurance policy of this type must be construed to provide coverage to the insured,

the employer, for intentional acts of the employee." *Id.* Applying this precedent, the court found that the insured was entitled to coverage for losses it was liable to pay as damages because of injuries arising from an illegal arrest conducted by its employee. *Id.*

Finally, the Ninth Circuit has upheld a California line of cases holding the same. California Insurance Code Section 533 provides, "[a]n insurer is not liable for a loss caused by the wilful act of the insured; but he is not exonerated by the negligence of the insured, or of the insured's agents or others." Section 533 codifies the general rule that an insurance policy indemnifying the insured against liability due to his own willful wrong is void as against public policy. *See Arenson v. Nat'l Auto. & Cas. Ins. Co.*, 45 Cal. 2d 81, 84, 286 P.2d 816, 818 (1955). California courts treat Section 533 as the equivalent to an exclusionary clause in the insurance policy and, like exclusions, construe it strictly against the insurer and liberally in favor of the insured. *See Nuffer v. Ins. Co. of N. Am.,* 236 Cal. App. 2d 349, 356 (Cal. Ct. App. 1965). In *Arenson*, the Supreme Court of California held that an exclusion barring coverage for intentional acts of "the insured" did not bar coverage to a parent (one insured) who had been held vicariously liable for damage caused by the intentional acts of his son (another insured). 45 Cal. 2d at 84. The parent was found liable under a statute imposing liability on a parent for property damage caused by the wilful acts of his/her child. *Id.* The Court considered whether Section 533 applied to preclude coverage and found that Section 533 did not apply where the insured was not personally at fault. *Id.*

In *Dart Indus., Inc. v. Liberty Mut. Ins. Co.*, 484 F.2d 1295 (9th Cir. 1973), the Ninth Circuit held that it was not against public policy, as codified in Section 533, to allow an employer/principal to insure itself against liability incurred for the willful acts of its agents or employees. *Id.* at 1299. In *Dart*, an insurer refused to indemnify a company for damages it was liable to pay for libel committed by its former president while in the scope of his employment. *Id.*

at 1296.  The insurer claimed that, because the intentional act of its president constituted an act of the company, Section 533 precluded coverage.  *Id.*  The court recognized a distinction between vicarious liability under the doctrine of *respondeat superior* imposed on a principal and the rights flowing to a principal from a policy of indemnity insurance.  *Id.* at 1297–98.  It found that the rationale of the public policy codified in Section 533 is "that the wrongdoer as a matter of public policy should not profit from his own wrong or, in other cases, a somewhat similar reasoning that the wrongdoer should not be indemnified against the effects of his wrongdoing."  *Id.* at 1298.  The court found that the former president would not gain anything if Dart were entitled to coverage, and thus permitted coverage and recovery as to the company.  *Id.*

These arguments and rationales apply with equal force here.  Any verdict rendered against the County on Plaintiff's indemnification claim will necessarily be predicated upon vicarious liability.  The jury need only find that a County employee, one of the County Individual Defendants, was acting within the scope of his or her employment when he or she committed the alleged misconduct; no finding of an intentional act by the County, nor authorization, ratification, acquiescence by the County of the employee's misconduct is necessary to find the County liable on the indemnification claim.  Accordingly, it is not against public policy to grant summary judgment on the County's interpretation of the Policy, as described herein.  To the contrary, in the event the County Individual Defendants are found liable for the claims alleged in Plaintiff's Complaint, prohibiting imputation to the County for those acts—as the Policy indeed prohibits— furthers the principle of individual responsibility for wrongdoing recognized by numerous courts, including the Wisconsin Supreme Court.

## CONCLUSION

For the foregoing reasons, Third-Party Plaintiff Milwaukee County respectfully requests that this Court enter summary judgment on the County's claim for declaratory judgment.

Dated: April 20, 2018

Respectfully submitted,

By: /s/ Dan K. Webb
Dan K. Webb, IL Bar No. 2954087*
Robert L. Michels, IL Bar No. 6199242*
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, Illinois 60601
Telephone: (312) 558-5600
Dwebb@winston.com
Rmichels@winston.com
*admitted to the E.D. Wis.

ATTORNEYS FOR MILWAUKEE COUNTY