IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

TERRILL BARNES, CURTIS PIGGEE,
and AMARI THOMAS-ACOSTA,
*by his mother and guardian Michelle Thomas-Acosta*,

              Plaintiffs,

v.

DAVID J. CLARKE, JR., RICHARD E. SCHMIDT,
CAPTAIN GEORGE GOLD, DECORIE SMITH,
MILWAUKEE COUNTY BEHAVIORIAL HEALTH DIVISION,
MILWAUKEE COUNTY, ARMOR CORRECTIONAL HEALTH
SERVICES, INC., JOHN DOE #1, JOHN DOES #2-10 and
JOHN DOES #11-20,

              Defendants.

Case No. 17-cv-355-
pp

---

ESTATE OF TERRILL J. THOMAS,
*by and through its special administrator Tiffany Robertson*,

              Plaintiff,

MILWAUKEE COUNTY,

              Third-Party Plaintiff,

v.

MILWAUKEE COUNTY, DAVID A. CLARKE, JR.,
NANCY EVANS, KEVIN NYKLEWICZ, SCOTT SOBEK,
JEFFREY ANDRYKOWSKI, LT. JOSHUA BRIGGS,
STEVEN HAW, KASHKA MEADORS,
DEVONTA TOWNES, RAFAEL BRITO,
MATTHEW CARROLL, LECARLIN COLLINS,
BRIAN DRAGOO, ANTHONY EMANUELE,
JORDON JOHNSON, THOMAS LAINE, DAVID LEDGER,
JOSHUA LEGERE, DEVIN O'DONNELL, JAMES RAMSEY-
GUY, DECORIE SMITH, DOMINIQUE SMITH, JOHN WEBER,
ARMOR CORRECTIONAL HEALTH SERVICES, INC.,
KAREN HORTON, KAREN GRAY, DEBORAH MAYOR,
and AMANDA OCACIO,

              Defendants.

Case No. 17-cv-01112

WISCONSIN COUNTY MUTUAL INSURANCE CORPORATION,

Third-Party Defendant.

**WISCONSIN COUNTY MUTUAL INSURANCE CORPORATION'S RESPONSE TO MILWAUKEE COUNTY'S MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

Plaintiffs allege that pursuant to Wis. Stat. § 895.46(1)(a), Milwaukee County (the "County") is required to pay or indemnify all judgments, including for compensatory and punitive damages, attorneys' fees, and costs that may be awarded against its officials and employees (the "Indemnification Claim"). (Milwaukee County's Proposed Statements of Material Fact ("PSF") ¶ 10; Comp., ¶ 10.) The coverage issues between Wisconsin County Mutual Insurance Corporation ("WCMIC") and the County arising out of the Indemnification Claim will only ripen <u>if</u> (1) the various individual defendants who are or were employees of the County ("Individual County Defendants") are found liable to Plaintiffs; (2) the Court or jury concludes that those Individual County Defendants committed a known violation of a penal statute, or committed a deliberately wrongful act, omission, or breach of duty; **and** (3) the Court or jury also concludes that the actions of those Individual County Defendants were within the scope of their employment.

In fact, the coverage issue on which the County now seeks an advisory opinion from this Court is not even an issue the Court will need to determine if either Plaintiffs do not prevail on their claims against the Individual Defendants or the acts of the Individual County Defendants, which form the basis of the Plaintiffs' Complaint, are found to have been committed outside of the scope of employment. Therefore, the County's Motion for Summary Judgment seeks an advisory opinion from this Court on an issue which is not yet ripe for adjudication. There is no reason why

this Court needs to address a coverage issue between WCMIC and the County that will only ripen if the above-referenced hypotheticals come to fruition.

Notwithstanding the ripeness issue, the WCMIC Policy issued to Milwaukee County ("the Policy") contains exclusions for criminal and deliberate wrongful acts. Thus, if the Individual County Defendants are found to have been acting within the scope of their employment, the above-referenced exclusions would still bar coverage for the Indemnification Claim if the Individual County Defendants' actions fall within said exclusions, as articulated in the Policy. These issues include scope of employment, intent and related matters – all of which need to be addressed in discovery.

The County misinterprets the exceptions to the above exclusions that provide that "any fact pertaining to any one *insured* shall not be imputed to any other *insured* for the purpose of determining the application of … this exclusion," in arguing that this Court should find that there is <u>hypothetical</u> insurance coverage for the Indemnification Claim. As the County acknowledges, there is no Wisconsin case law expressly interpreting the above exception to the exclusions in the unreasonable manner that the County seeks to apply it (or at all). The extra-jurisdictional cases relied upon by the County are readily distinguishable from the instant case and add little to the hypothetical coverage analysis in this case. Further, the County's proposed interpretation of the above exception to the exclusions is unsupported by public policy.

Again, it bears repeating that there is absolutely no reason why this Court needs to address a coverage issue between WCMIC and the County, which is not ripe and may never be ripe for adjudication. It is clear from the County's Motion that the County is attempting to get an advisory ruling from this Court to then use in an unrelated case, *Martin*, where the parties have a similar

dispute that has not been resolved despite that case being on appeal to the Seventh Circuit. For these reasons, this Court should deny the County's Motion for Summary Judgment.

## ARGUMENT

I.   **Milwaukee County is Not Entitled to an Advisory Opinion that the Policy Provides Coverage for the Indemnification Claim Because This Issue Will Not Be Ripe for Adjudication Unless and Until the Individual County Defendants (1) Are Found Liable to the Plaintiffs; (2) Are Found To Have Committed a Known Violation of a Penal Statute or a Deliberately Wrongful Act, Omission or Breach of Duty; and (3) Are Found to Have Been Acting Within the Scope of Their Employment.**

At the outset, the County is clearly and unequivocally asking this Court to issue an advisory opinion. In other words, the County is asking this Court to issue a decision that necessarily depends on three things occurring, none of which have in fact occurred: (1) Plaintiffs prevailing against the Individual County Defendants; (2) a court or jury finding that those Individual County Defendants committed a known violation of a penal statute or a deliberately wrongful act, omission or breach of duty; and (3) the jury also concluding that the actions of those Individual County Defendants were within the scope of their employment. Those are three conditions that necessarily need to be met in order for this issue that the County has submitted to this Court to actually be ripe for decision. At this juncture, the above questions are not yet ripe for decision, and therefore, the relief sought by the County amounts to a request for an advisory opinion. This Court is not in a position to render such an opinion pursuant to well-settled law concerning the Declaratory Judgment Act.

The Declaratory Judgment Act only grants jurisdiction over "actual controvers[ies]," 28 U.S.C. § 2201(a), and it may not be used to "secur[e] an advisory opinion in a controversy which has not arisen." *Aero-Stream, LLC. V. SepticairAID, LLC*, 2015 U.S. Dist. LEXIS 26999, 9-10 (E.D. Wis. March 5, 2015) (citing *Coffman v. Breeze Corps*., 323 U.S. 316, 324, 65 S. Ct. 298, 89 L. Ed. 264, 1945 Dec. Comm'r Pat. 576 (1945); *see also Matthews Int'l Corp. v. Biosafe Eng'g*,

695 F.3d 1322, 1329 (Fed. Cir. 2012) ("A party may not obtain a declaratory judgment merely because it would like an advisory opinion on whether it would be liable for patent infringement.")).

"A declaratory judgment action is not intended to permit hypothetical cases to be brought before the court to enable parties to secure advisory opinions or legal advice from the court with regard to future controversies." *Scottsdale Ins. Co. v. Vill. Of Dixmoor*, 2014 U.S. Dist. LEXIS 48123, 8 (N.D. Ill. April 8, 2014) (citing *Weber v. St. Paul Fire*, 251 Ill.App.3d 371, 373, 622 N.E.2d 66, 68, 190 Ill. Dec. 656 (3d Dist. 1993)). "For a controversy to be ripe for consideration, matters critical to liability in an underlying case should be completed in the underlying lawsuit before it is litigated in a declaratory judgment action." *Id.* (citing *Fidelity & Casualty of New York v. Envirodyne Engineers, Inc.*, 122 Ill.App.3d 301, 307, 461 N.E.2d 471, 475, 77 Ill. Dec. 848 (1st Dist. 1983); *Landmark American Ins.*, 2011 IL App (1st) 101155, 962 N.E.2d 562, 356 Ill. Dec. 877 (Dec 5, 2011); *Allstate Insurance Co. v. Kovar*, 363 Ill.App.3d 493, 501, 299 Ill. Dec. 916, 842 N.E.2d 1268 (2006), *Maryland Casualty v. Peppers*, 64 Ill. 2d 187, 197, 355 N.E.2d at 24-30 (1976)). "To the extent a declaration relies on the determination of ultimate questions of fact that remain at issue in the underlying litigation, the question is not ripe for determination and declaratory judgment is inappropriate." *Id.* at 8-9 (citing *Allstate Insurance Co. v. Kovar*, 363 Ill.App.3d 493, 501, 299 Ill. Dec. 916, 842 N.E.2d 1268 (2006) (citing *Peppers*, 64 Ill. 2d at 197, 355 N.E.2d 24)).

For example, in *Grace Christian Fellowship v. KJG Invs., Inc.*, the plaintiff sought an order finding coverage under all three of defendant's insurance policies, "based on the undisputed facts[,] on the language of the policies, the undisputed facts which trigger coverage, and the inapplicability of policy exclusions." 2011 U.S. Dist. LEXIS 105978, 13-14 (E.D. Wis. September 16, 2011). The court held that the plaintiff was "[s]eeking an order that defendant Colony has a

duty to indemnify defendants KJG and PSK;" however, the court held that the "duty to indemnify is not ripe for adjudication until the insured is in fact held liable in the underlying suit." *Id*. at 14 (citing *Nationwide Insurance Co. v. Zavalis*, 52 F.3d 689, 693 (7th Cir. 1995); see also *Casual Dining Dev., Inc. v. QFA Royalties, LLC*, 2008 U.S. Dist. LEXIS 70586, 5 (E.D. Wis. Sept. 5, 2008); *General Cas. Co. v. Hills*, 209 Wis. 2d 167, 561 N.W.2d 718, 733 n. 11 (1997) (considering only the insurance company's duty to defend "because the duty to indemnify issue must await resolution of the claim brought" against the insured)). In *Grace*, the court held that with respect to the plaintiff's motion for summary judgment as to coverage, no case or controversy existed that was ripe for adjudication, as there had been no finding of liability against either of the defendant insureds. *Id.* Accordingly, the court denied the motion for summary judgment. *Id.*

In the instant case, the County seeks exactly the type of declaration regarding a hypothetical and future controversy that well-settled case law has already determined this Court is not permitted to render. In fact, the County acknowledges that in order for Plaintiffs to prevail on their Indemnification Claim, the Plaintiffs would have to prevail on liability against the Individual County Defendants and also prevail on their claim that those Defendants were acting within the scope of employment. Yet, the County asserts that this Court need not decide that issue at this juncture, as the County is only asking for a ruling that "*to the extent the County is found liable* on the Indemnification Claim (which would require a finding that the individuals who committed conduct at issue were acting within the scope of their employment), the policy provides coverage for that liability." (Dkt. 86, Cty.'s Br. at p. 10, fn. 4.) (Emphasis added.)

The County makes broad assertions that the Indemnification Claim falls within both the *personal injury coverage* and *errors and omissions coverage.* The County devotes significant briefing to an analysis of the definition of "injury" with respect to *personal injury coverage* and

whether the acts alleged by Plaintiffs constitute misfeasance, malfeasance or nonfeasance with respect to *errors and omissions coverage.* Notably, the County's analysis of coverage under both the *personal injury coverage* and *errors and omissions coverage* glosses over what will undoubtedly be a key issue in this case, namely whether the Individual County Defendants were acting within the scope of their employment.

At least the County acknowledges in concluding its arguments analyzing whether an initial grant of coverage exists under the *personal injury coverage* or *errors and omissions coverage,* that its analysis in both instances hinges on a finding that the "County Individual Defendants are found to be acting in the scope of their employment with the County." (Dkt. 86, Cty. Br. at pp. 15, 16.) In fact, it is this acknowledgment that is dispositive in the instant motion. As noted above, if the jury finds that the Individual County Defendants are liable under Plaintiffs' claims and the jury finds they these Defendants were not acting in the scope of their employment or authority, then the County will prevail on the Indemnification Claim. Thus, the only instance in which the County will be responsible for the Individual County Defendants' actions is if the jury finds that the Individual County Defendants are liable under Plaintiffs' claims and the jury finds they these Defendants' acts were committed within the scope of their employment or authority.

WCMIC needs to conduct discovery before it will be in a position to file a Motion for Summary Judgment on the coverage issues. As previously set forth in WCMIC's Response to the County's Response to the Motion to Stay, WCMIC needs to conduct discovery on the issues concerning the conduct by the Individual County Defendants before coverage will be ripe for adjudication. These issues include scope of employment, intent and related matters – all of which need to be addressed in discovery. (Dkt. 80, WCMIC's Response to Milwaukee County's Response to Motion to Stay.) Because the issue of coverage in the instant case hinges, in part, on

whether the Individual County Defendants were acting within their scope of employment, there is no case or controversy that is ripe for adjudication before this Court at this time. *See Scottsdale*, 2014 U.S. Dist. LEXIS 48123, 8-9; *Grace*, 2011 U.S. Dist. LEXIS 105978, 13-14. As in *Grace*, no case or controversy that is ripe for adjudication will exist until there has been a finding of liability against the Individual County Defendants. 2011 U.S. Dist. LEXIS 105978, 13-14. Based on the foregoing, the County's Motion for Summary Judgment, seeking an advisory opinion on coverage matters must be denied.

**II.**      **The County is Not Entitled to a Finding that the Conduct of a County Employee Cannot Be Imputed to the County for Purposes of Applying the Policy Exclusions, as This Issue Will Not Be Ripe for Adjudication Unless the Individual County Defendants Are Found Liable to Plaintiffs and Are Found to Have Been Acting Within the Scope of Their Employment, and in That Event, the Criminal or Deliberate Wrong Exclusions Apply.**

The County is seeking an advisory opinion from this Court on a <u>triple</u> hypothetical. As set forth above, the County is asking this Court to issue a decision dependent on three things occurring in the future: (1) Plaintiffs prevailing against the individual Defendants; (2) a court or jury finding that those individual defendants committed a known violation of a penal statute or a deliberately wrongful act, omission or breach of duty; and (3) the jury also concluding that the actions of those Defendants were within the scope of their employment.

The Policy contains *personal injury* and *errors and omissions* coverage provisions, both of which contain exclusions for criminal and deliberate wrongful acts (the "Criminal or Deliberate Wrong Exclusions"). (PSF ¶ 29; Third-Party Compl., ¶ 52; WCMIC Answer ¶ 41; County Compl., Ex. 1, at Section V, subsections L.3, N.3, and N.4.) Thus, not only is the County asking for an advisory opinion in the event that a jury concludes the actions of the Individual County Defendants were within the scope of employment. In addition, the County is <u>also</u> asking for an advisory

opinion in the event that a court or jury finds that the Individual County Defendants' conduct falls within the Criminal or Deliberate Wrong Exclusions.

As set forth above, it is well-settled that the Declaratory Judgment Act only grants jurisdiction over "actual controvers[ies]," 28 U.S.C. § 2201(a), and it may not be used to "secur[e] an advisory opinion in a controversy which has not arisen." *Aero-Stream*, 2015 U.S. Dist. LEXIS 26999, 9-10. Here, the County seeks an advisory opinion with regard to a future controversy that will only arise if the triple hypothetical set forth above comes to fruition. Declaratory judgment is not intended or permitted to address such hypotheticals. *Scottsdale,* 2014 U.S. Dist. LEXIS 48123, 8-9. On this basis alone, this Court should deny the County's Motion for Summary Judgment because it is not ripe for adjudication.

Notwithstanding the ripeness issues, which should form the basis for the Court's denial of the County's Motion for Summary Judgment, there is no coverage for the Indemnification Claim under the Policy. Public policy does not mandate a different result.

### A.     The Reasonable Interpretation of the Policy is that the Criminal or Deliberate Wrong Exclusions Bar Coverage for the Indemnification Claim.

The Criminal or Deliberate Wrong Exclusions contain unambiguous statements that "any fact pertaining to any one insured shall not be imputed to any other insured for the purpose of determining the application of" the pertinent exclusion, which the County refers to as the "No-Imputation Provision." (*Id.*) However, the County submits an unreasonable interpretation of this No-Imputation Provision in a strained attempt to obtain coverage for the Indemnification Claim where a reasonable insured would not expect there to be coverage.

The genesis of the County's Third-Party Complaint against WCMIC is the Indemnification Claim. However, Wisconsin's indemnification statute, Wis. Stat. § 895.46, does not provide a private cause of action for indemnification. *Jackson v. Graves*, 2015 U.S. Dist. LEXIS 126841, at

*8 (E.D. Wis. Sep. 22, 2015). "Rather, it provides that if a public officer or employee, acting in his or her official capacity, is sued as an individual, and the jury finds that the officer or employee was acting within the scope of his or her employment, the state (or the political subdivision which employ the officer or employee) will pay the damages." *Id.; Thuermer v. Village of Mishicot,* 86 Wis. 2d 374, 378-79, 272 N.W.2d 409 (Ct. App. 1978), *aff'd*, 95 Wis. 2d 267, 290 N.W.2d 689 (1980). Thus, the purpose of the statute is to enable an official of a political subdivision to bring an action against that political subdivision for reimbursement. *See Thuermer*, 86 Wis. 2d at 378-79. The "public policy behind" the statute is to "give an employee acting in his official capacity some financial protection in the event he was sued for acts which he performed for the governmental unit by which he was employed." *Harris v. County of Racine*, 512 F. Supp. 1273, 1277 (E.D. Wis. 1981) (citing *Thuermer*, 86 Wis. 2d at 378-79). Therefore, the County's liability under § 895.46 flows directly and exclusively from a liability finding against its officer or employee who commits the acts giving rise to liability in the scope of employment. There is no separate and distinct claim against the County. The County's liability, by statute, is liability imposed on its employee.

Thus, the coverage being sought by the County under the Policy is for amounts the County may have to indemnify on behalf of the Individual County Defendants pursuant to Wis. Stat. § 895.46(1)(a) in the event that the actions of the Individual County Defendants which give rise to liability were committed in the scope of their employment. In other words, the County is seeking insurance coverage for its statutory obligation to indemnify the Individual County Defendants. An obligation that will only arise if the Plaintiffs prevail against the Individual County Defendants on Plaintiffs' causes of action against them. It is for this reason that the exception to the exclusion is not even implicated in this case. If the exclusion applies to the Individual County Defendants'

actions (which will be determined at a later point in this case), then the exclusion applies and precludes coverage. There is no separate analysis of the exception to the exclusion because the conduct is excluded. This is an entirely different analysis, however, from the County's own liability for its actions as asserted in the Complaint. The exception to the exclusion would apply to ensure that the Individual County Defendants' actions do not preclude coverage to the County for the County's own actions. That is the clear and plain purpose of the exception to the exclusion. "Any fact" pertaining to any Individual County Defendant cannot be imputed to the County for purposes of determining whether WCMIC provides coverage to the County for its own conduct. Again, the indemnification claim is not a claim against the County. It is a basis for holding the County liable for the Individual County Defendants' actions without any further analysis of the County's own conduct.

The No-Imputation Provision should reasonably be construed as meaning that, for example, any fact pertaining to any one of the Individual County Defendants, as an insured, shall not be imputed to any other Individual County Defendant, as an insured, for purposes of determining the application of the Criminal and Deliberate Wrong Exclusions. Or, if the County's Third-Party Complaint asserting coverage was for coverage for an actual distinct claim of wrongdoing asserted against the County (e.g., a claim against the County alleging a pattern or practice), then WCMIC would need to prove the applicability of the Criminal and Deliberate Wrong Exclusions as to all insureds. Another example of the purpose of the No-Imputation Provision could arise if there is a claim asserted against an employee which fell under an exclusion and a negligent supervision claim asserted against an employer. The insurer would need to establish the applicability of the exclusion to the employer insured based on the employer insured's

own conduct, separately from the employee insured's conduct. This logic simply does not follow in the context of the statutory indemnification requirement imposed on the County.

### B. The Extra-Jurisdictional Case Law Relied Upon by the County to Support its Unreasonable Interpretation of the Policy is Readily Distinguishable.

The County has not identified any Wisconsin case law that applies the exception to the exclusion for a simple indemnification claim. Furthermore, the County has not identified any such case law from <u>any</u> jurisdiction. As set forth above, the County's Third-Party Complaint against WCMIC is the Indemnification Claim based on Wisconsin's indemnification statute, Wis. Stat. § 895.46, which <u>does not</u> provide a private cause of action for indemnification. *Jackson*, 2015 U.S. Dist. LEXIS 126841, at *8 (E.D. Wis. Sep. 22, 2015). Thus, the County's liability, if any, under the Indemnification Claim, flows directly and exclusively from a liability finding against its officer or employee who commits the acts giving rise to liability in the scope of employment. There is no separate and distinct claim against the County. The County's liability, by statute, is liability imposed on its employee. The purpose behind the indemnification statute is reimbursement and financial protection for a governmental employee who was acting within the scope of his or her employment. *Thuermer*, 86 Wis. 2d at 378-79. At bottom, the cases relied upon by the County are not binding on this Court and are otherwise readily distinguishable from the facts of the instant case because they do not address exclusions similar to the Criminal or Deliberate Wrong Exclusions at issue in this case and do not address coverage in the context of a statutorily imposed indemnification claim.

At the outset, the two primary cases relied upon by the County, *Lifespan Corp.* and *In re HealthSouth Corp* involved directors and officers liability insurance (often called D&O), which is a special type of insurance intended to protect officers and directors from the liability of the corporation. *Lifespan Corp. v. Nat'l Union Fire Ins. Co.*, 59 F. Supp. 3d 427, 452 (D.R.I. 2014);

*In re HealthSouth Corp*., 308 F. Supp. 2d 1253, 1285 (N.D. Ala. 2004). As noted by the court in *In re HealthSouth Corp*, without such coverage, finding qualified persons to serve on a board of directors would be extremely difficult. *Id.* Further, the D&O coverage in *In re HealthSouth Corp* was based upon declarations and statements made in written applications by the insured. *Id.* at 1261. Thus, the policies at issue generally provided that no statement in the application or knowledge possessed by any insured person could be imputed to any other. *Id.* In other words, the purpose of the provision in the context of a D&O policy is that if one director or officer made misrepresentation in his or her application, which could render their coverage void, that misrepresentation could not be imputed to a different director or officer who acted in good faith. *Id.* at 1277. This makes sense in keeping with the purpose of such policies which is to provide protection to directors and officers so that they do in fact serve on boards.

*Lifespan Corp.* and *In re HealthSouth Corp* are distinguishable on multiple fronts. First, a D&O policy is a completely different type of policy than the Public Entity Liability Insurance Policy issued by WCMIC to Milwaukee County in the instant case. As summarized above, a D&O policy serves a purpose specific to issues that arise in a corporate context. It follows that neither case addressed the specific exclusions that are at issue in the instant case.

Further, in both cases, there were lawsuits filed against <u>both</u> the corporation and its officers and directors alleging securities fraud violations. *Lifespan Corp*., 59 F. Supp. 3d at 447; *HealthSouth* 308 F. Supp. 2d at 1257. For example, in the underlying suit in *Lifespan*, the court found Lifespan liable for an employee's acts based on agency principles whereby a "corporation is vicariously liable for the tortious conduct of its employees committed within the scope of his employment." 59 F. Supp. 3d at 447. Yet, there was no evidence that anyone other than that employee had committed deliberate fraudulent conduct. *Id.* Thus, based on the no-imputation

13

language at issue in *Lifespan Corp.*, the court found that such language prevented the court from imputing the employee's deliberate fraudulent conduct to the other insured. *Id.* Therefore, *Lifespan* is distinguishable from the instant case because Lifespan was independently liable for a cause of action against it, separate from that against the employee in that case. *In re HealthSouth Corp.* is similarly distinguishable because in that case, numerous lawsuits alleging securities fraud were filed against HealthSouth, its officers and directors. 308 F. Supp. 2d at 1257.

In contrast, the Indemnification Claim, requiring the County to pay or indemnify all judgments against its employees, pursuant to Wis. Stat. § 895.46(1)(a) in this case will ripen only after the Individual County Defendants are found both liable to Plaintiffs and are found to have been acting within the scope of their employment. The Indemnification Claim is not a private cause of action against the County for the County's own actions. Its sole purpose is to reimburse employees acting within the scope of their employment. This is an entirely different scenario than an insurer attempting to avoid providing coverage for one of its insureds for that insured's own liability or judgment against that insured based on the conduct of another insured. In sum, *Lifespan Corp.* and *HealthSouth Corp.* have no application to the coverage issue in the instant case.

The second two extra-jurisdictional cases relied upon by the County, *Fed. Ins. Co. v. SafeNet, Inc.*, 817 F. Supp. 2d 290 (S.D.N.Y. 2011) and *TransSched Systems Ltd. v. Fed. Ins. Co.*, 958 F. Supp. 2d 331 (D.R.I. 2013) also involved D&O policies, and are similarly distinguishable from the instant case for that reason. In *SafeNet* and *TransSched*, the D&O policies had more detailed provisions that indicated that only facts pertaining to knowledge possessed by certain individuals (e.g., the CFO, CEO, President) could be imputed to the corporation for purposes of certain exclusions. *SafeNet*, 817 F. Supp. 2d at 295; *TransSched*, 958 F. Supp. 2d at 337.

In *SafeNet*, shareholders commenced an action against SafeNet and numerous individuals alleging false and misleading statements. 817 F. Supp. 2d at 297. One of the individual defendants in the civil action, Argo, was Vice President and Chief Financial Officer of SafeNet and faced a criminal indictment for securities fraud and pled guilty to that charge. *Id.* The coverage issue was whether there was insurance coverage for the civil claims brought against SafeNet as a result of Argo's guilty plea. *Id*. at 303. The imputation provision at issue in that case provided that "only facts pertaining to and knowledge possessed by any past, present or future chairman of the board, president, chief executive officer, chief operating officer, chief financial officer, or General Counsel…of any Organization shall be imputed to an Organization." *Id.* The court held that pursuant to this provision, while "facts" and "knowledge" possessed by Argo could be imputed to SafeNet, the judgment against Argo could not be imputed to SafeNet. *Id*. at 303-304. The effect of this was simply that the insurer could not impute the judgment against Argo for fraud against SafeNet for purposes of determining whether an exclusion barred coverage for SafeNet for plaintiffs' allegations against SafeNet of making false and misleading statements.

Again, the facts of *SafeNet* are distinguishable from the instant case for multiple reasons. *SafeNet* involved a D&O policy, not a Public Entity Liability Policy. *SafeNet* did not analyze the exclusions at issue in the instant case. There were also civil claims brought against *SafeNet*. In contrast, WCMIC's Policy does not provide coverage for the County's statutory obligation, arising out of Wisconsin's indemnification statute, to pay a judgment against one of its employees arising out of conduct that is subject to the Criminal and Deliberate Wrong Exclusions. The instant case presents a scenario that is quite different than, for example, if the County and the Individual County Defendants faced the allegations. In the latter example, it would make sense that the coverage analysis be applied separately to each insured, the County and the Individual County Defendants,

for purposes of determining whether each insured's respective conduct was subject to an exclusion. Rather, in this case the County's liability under § 895.46 flows directly and exclusively from a liability finding against its officer or employee who commits the acts giving rise to liability in the scope of employment. There is no separate and distinct claim against the County. The County's liability, by statute, is liability imposed on its employee.

Similarly, in *TransSched*, TransSched obtained a jury verdict against Versyss for breach of contract, breach of the covenant of good faith and fair dealing and intentional misrepresentation. 958 F. Supp. 2d at 333. Verdicts were also obtained for claims against the Vice President and Chief Technology Officer. *Id.* Versyss failed to pay the judgment against it and its insurer disclaimed any duty to indemnify based on the policy's fraud and contract exclusions. *Id.* The imputation provision at issue in *TransSched* contained specific language regarding certain officers whose conduct could be imputed to the corporation for purposes of the fraud exclusion, which included the CFO, President and CEO. *Id.* at 337. Versyss's insurer attempted to impute the fraudulent acts of the Vice President and Chief Technology Officer to the corporation. *Id.*

Again, *TransSched* is distinguishable from the instant case in that it deals with a provision in a D&O insurance policy that was very specific about imputing conduct of certain officers and directors to the corporation. Further, as in *SafeNet*, Versyss's insurer was attempting to avoid providing coverage to Versyss for a judgment rendered against Versyss itself based on Versyss's own conduct rather than the conduct of another insured. For the reasons set forth above, that scenario is very different from the one set forth under the facts of the instant case where the County's liability under the Indemnification Claim flows directly from a liability finding against its officer or employee who commits the acts giving rise to liability in the scope of employment.

In sum, the County has not identified any case law from any jurisdiction that addresses the application of the exclusion and exception to the exclusion at issue in this case. Further, the County has not identified any case law applying said exception (or a similar exception for that matter) in the context of an indemnification claim. Again, the Indemnification Claim is the sole basis of the County's potential liability for damages in this case. The Indemnification Claim is based on Wis. Stat. § 895.46(1) the purpose of which is solely to provide reimbursement and financial protection to a governmental employee acting within the scope of employment. *Thuermer*, 86 Wis. 2d at 378-79. Therefore, the instant case presents a wholly different factual situation than that presented in any of the above cases. The above cases addressed coverage for corporate entities under D&O policies for causes of action brought against those corporate entities arising out of conduct of corporate officers and directors. The cases relied upon by the County are wholly out of context and are of no useful application to the Court in analyzing the coverage issues in this case.

**C.    Public Policy Does Not Support the County's Unreasonable Interpretation of the Policy.**

Notwithstanding the fact that the County's Motion for Summary Judgment should be dismissed because it is not yet ripe for adjudication, the Criminal or Deliberate Wrong Exclusions otherwise apply in the instant case under a reasonable interpretation of those exclusions as set forth above. There is no separate analysis of the exception to the exclusion because the conduct is excluded. Therefore, it is unnecessary for this Court to address the coverage issue, which forms the basis of the County's Motion for Summary Judgment, whatsoever in this case. It follows that it is certainly unnecessary for this Court to delve into a public policy analysis in order to resolve the County's Motion for Summary Judgment.

That said, the County relies heavily on cases from other jurisdictions in support of its public policy argument. Once again, these cases are readily distinguishable from the instant case and do

not offer any insight into the issue before this Court in the instant case. None of the cases relied upon by the County in support of its public policy argument address an exclusion in any way similar to the Criminal or Deliberate Wrong Exclusions at issue in this case. Further, none of the cases relied upon by the County involve a claim based solely on indemnification as is at issue here.

In fact, a line of Wisconsin cases discussing the independent concurrent cause doctrine, not cited to by the County, is more instructive on the particular issue in this case. Those cases have held that if the covered risk is not actionable without the occurrence of an excluded risk, then the covered risk is not sufficiently independent to trigger coverage under the policy. *Siebert v. Wis. Am. Mut. Ins. Co.*, 2011 WI 35, ¶ 40, 333 Wis. 2d 456, 797 N.W.2d 484.

The only Wisconsin case relied upon by the County in support of its public policy argument is *Hedtcke v. Sentry Ins. Co,* which is distinguishable on multiple fronts. 109 Wis. 2d 461, 326 N.W.2d 727 (1982). First, this case dealt with a first party insurance coverage dispute, not a third party liability dispute. Second, the issue as framed by the court was very narrow and specific. The issue in *Hedtcke* was whether the intentional act of an insured joint owner of property bars an innocent insured joint owner of property from recovering under a fire insurance policy. *Id.* at 481. At the outset, the court's generalized statements in *Hedtcke* regarding the rights of an innocent insured are certainly different in the context of an innocent spouse whose estranged spouse intentionally set fire to their home, than in the context of a municipality's statutorily imposed obligation to pay a judgment against its employees. Obviously, the Wisconsin Legislature was not concerned with the "innocence" of municipalities in passing Wis. Stat. § 895.46(1)(a) into law. Nevertheless, the only holding of *Hedtcke* was that it did away with an absolute bar to recovery by an innocent insured and instead indicated that the innocent insured's rights must be determined in

the particular factual context of the case and in light of the public policy concerns discussed in the case. *Id.* at 489. *Hedtcke* has no application in this case.

*Hendrix v. Employers Mutual Liability Ins. Co.* is immediately distinguishable by the terms of the insurance policy at issue. 98 F. Supp. 84 (E.D.S.C. 1951). The policy provided that the insurer agreed "[t]o pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person and caused by accident." *Id.* at 85. By endorsement, the words "caused by accident" were deleted and thus the policy, as amended, provided coverage for damages caused by bodily injury. *Id.* The court held that the insurer was required by the insurance contract to defend the plaintiff against the action for assault and battery. *Id.* at 87. The Court simply upheld the plain terms of the policy. Notably, there was no Criminal or Deliberate Wrong Exclusions at issue in *Hendrix*. Further, there was no statutory indemnification claim in *Hendrix*. Thus, its application is of no use in this case.

*Western Cas. & Sur. Co. v. Aponaug Mfg. Co.* is similar to a number of the cases discussed above in that there was a complaint filed and allegations made against a company after one of its employees assaulted the plaintiff. 197 F.3d 673 (5th Cir. 1952). The court simply held that the assault and battery exclusion which read "assault and battery shall be deemed an accident unless committed by or at the direction of the insured" did not preclude coverage for the complaint against the company. *Id.* at 674. Again, this is distinguishable from the instant case where the Indemnification Claim, requiring the County to pay or indemnify all judgments against its employees, pursuant to Wis. Stat. § 895.46(1)(a), will ripen only <u>after</u> the Individual County Defendants are found both liable and acting within the scope of their employment. This is quite a

different scenario than an insurer attempting to avoid providing coverage for one of its insureds for that insured's own liability or judgment against that insured.

*Baltzar v. Williams* is even less helpful than the prior three cases relied upon by the County in support of its public policy argument. 254 So. 2d 470 (La. Ct. App. 1971). As noted by the court in *Baltzar*, "[t]here is no specific exclusion in the policy which would limit coverage in this situation." *Id.* at 472. *Baltzar* is really an occurrence analysis. *Id.* Thus, its applicability is tenuous at best to the instant case.

Likewise, *Arneson v. Nat'l Auto & Cas. Ins. Co.* is distinguishable in that the holding relies on a California statute. 45 Cal. 2d 81, 84, 286 P.2d 816, 818 (1955). The County has not pointed to any similar statutory authority to support its position in the instant case. Second, *Arneson* addresses coverage for an insured father for a judgment against the father for acts of his minor son. Again, there was a claim made and judgment obtained against the father in *Arneson,* which differs from the application of the indemnification statute in the instant case. Further, *Arneson,* applying California law, is inconsistent with Wisconsin law. *Arneson* states that "a particular insured is not precluded from recovering merely because the claim of another insured is barred under the terms of an exclusion." *Id.* For the same reasons, *Dart Indus., Inc. v. Liberty Mut. Ins. Co.,* 484 F.2d 1295 (9th Cir. 1973), another case out of California, which cites to *Arneson* and the California statute referenced in *Arneson,* is of little persuasive value. In contrast, a line of Wisconsin cases has held that if the covered risk is not actionable without the occurrence of an excluded risk, then the covered risk is not sufficiently independent to trigger coverage under the policy. *Siebert v. Wis. Am. Mut. Ins. Co.*, 2011 WI 35, ¶ 40, 333 Wis. 2d 456, 797 N.W.2d 484.

In *Siebert,* the Wisconsin Supreme Court held that an alleged negligent entrustment of a vehicle claim did not constitute an independent concurrent cause of plaintiff's injuries sufficient

to trigger coverage when no coverage existed for the alleged negligent operation of the vehicle. 2011 WI 35, 333 Wis. 2d 456, 797 N.W.2d 484. The facts of *Siebert* were as follows: Jessica Koehler gave her boyfriend, Jesse Raddatz, permission to drive her father's car to a food pantry. *Id.* ¶ 7. Koehler advised Raddatz that he could use the car as long as he went to the food pantry and came right back. *Id.* Instead, Raddatz picked up more passengers, including Jessica Siebert, and headed to a party. *Id.* ¶ 8. While traveling to a party, Raddatz was involved in a car accident. *Id.* ¶ 9. Raddatz and one other passenger were killed and four others were injured, Jessica Siebert severely. *Id.* ¶ 10.

The court concluded that Raddatz did not qualify as an "insured person" under the policy because he exceeded the scope of Koehler's permission when he drove the vehicle to a party instead of the food pantry. *Id.* ¶ 36. Therefore, Raddatz's alleged negligent operation of the vehicle fell outside of the scope of the policy's initial grant of coverage. *Id.*

It was undisputed that Koehler qualified as an "insured person" under the policy. *Id.* ¶ 37. The court noted that the act of entrusting a vehicle to another may constitute an exercise of "use" of a vehicle. *Id.* (citing *Bankert v. Thresherman's Mut. Ins. Co.*, 110 Wis. 2d 469, 480, 329 N.W.2d 150 (1983)). Therefore, the court assumed without deciding that Koehler's entrustment of the vehicle constituted "use" and that Koehler's alleged negligent entrustment of the vehicle was a covered risk under the policy. *Id.* ¶ 38.

However, Wisconsin American argued that there was no coverage for Koehler's negligent entrustment of the vehicle to Raddatz because it required the occurrence of an excluded risk (i.e., Raddatz's alleged negligent operation of a vehicle) to be actionable. *Id.* ¶ 39. Wisconsin American argued that Koehler's alleged negligent entrustment was not an independent concurrent cause of Siebert's injuries sufficient to trigger coverage. *Id.* The court agreed. *Id.*

In its decision, the *Siebert* court reiterated the independent concurrent cause rule as follows:

"[w]here a policy expressly insures against loss caused by one risk but excludes loss caused by another risk, coverage is extended to a loss caused by the insured risk even though the excluded risk is a contributory cause." *Kraemer Bros., Inc. v. U.S. Fire Ins. Co.*, 89 Wis. 2d 555, 570, 278 N.W.2d 857 (1979). However, in order to trigger coverage, "[t]he independent concurrent cause must provide the basis for a cause of action in and of itself and must not require the occurrence of the excluded risk to make it actionable." *Estate of Jones v. Smith*, 2009 WI App 88, ¶ 5, 320 Wis. 2d 470, 768 N.W.2d 245 (quoting *Smith v. State Farm Fire & Cas. Co*., 192 Wis. 2d 322, 332, 531 N.W.2d 376 (Ct. App. 1995)). Stated conversely, if the covered risk is not actionable without the occurrence of an excluded risk, then the covered risk is not sufficiently independent to trigger coverage under the policy.

*Id*. at ¶ 40.

The question addressed in *Siebert* was whether the covered risk, Koehler's alleged negligent entrustment of the vehicle, was actionable without the occurrence of the excluded risk, Raddatz's alleged negligent operation of the vehicle. *Id*. ¶ 41. The court concluded that the answer was no. *Id*. While negligent entrustment constitutes an independent act of negligence, that negligence is nonactionable in absence of a negligent act by the entrustee. *Id.* ¶ 42. Therefore, the court concluded that there was no coverage for Koehler's alleged negligent entrustment of the vehicle to Raddatz because that act was not an independent concurrent cause of Siebert's injuries. The alleged negligent entrustment could not render Koehler liable without the occurrence of the excluded risk – Raddatz's alleged negligent operation of the vehicle *Id*. ¶ 55.

In sum, *Siebert* held that negligent entrustment of a vehicle is not an independent concurrent cause of action sufficient to trigger coverage when no coverage exists for the alleged negligent operation of the vehicle. *Id*. ¶ 56. Therefore, there was no coverage under the Wisconsin American policy for Siebert's negligent entrustment claim. *Id.*

In the instant case, there is no coverage for the Indemnification Claim, as the County's obligations under the indemnification statute do not constitute a private cause of action. Therefore,

similar to the outcome in *Siebert*, the Indemnification Claim is not an independent cause of the plaintiffs' injuries in this case. The Indemnification Claim, by its very nature, will not materialize unless there is a judgment against the Individual County Defendants arising out of the allegations against them in the Complaint. Without the actions of the Individual County Defendants, as alleged in the Complaint, there would be no potential for an Indemnification Claim to exist whatsoever. To that end, the analysis and holding of *Siebert* may be helpful in analyzing the coverage issue in the instant case from a public policy perspective, should this Court not otherwise find the issue is not ripe for consideration.

## CONCLUSION

Based on the forgoing, the Third-Party Defendant, Wisconsin County Mutual Insurance Corporation, respectfully requests that the Third-Party Plaintiff, Milwaukee County's, Motion for Summary Judgment be denied.

Dated this 21st day of May, 2018.

AXLEY BRYNELSON, LLP

*/s/ Jennifer M. Luther*
Lori M. Lubinsky (State Bar No. 1027575)
Jennifer M. Luther (State Bar No. 1065234)
Attorneys for Third-Party Defendant
Wisconsin County Mutual Insurance Company
Suite 200, 2 East Mifflin Street (53703)
Post Office Box 1767
Madison, WI 53701-1767
Telephone: (608) 257-5661
Facsimile: (608) 257-5444
Email: llubinsky@axley.com
           jluther@axley.com